## DEVENEY, HOOD & COMPANY *v.* BURTON.

When, on the trial of a claim to land levied on under an execution issued from a judgment rendered in an attachment case, it appeared that after the declaration in attachment had been filed the claimant, who was the father of the defendant in attachment, with knowledge that the attachment had been issued and that the son had no property except that in controversy in the claim case, took from him a deed

thereto, it was error to direct a verdict in the claimant's favor, even though the entry respecting the attachment, on the attachment docket, did not embrace a description of the property.

Argued February 6, — Decided February 28, 1900.

Levy and claim. Before Judge Callaway. Burke superior court. October term, 1898.

*Lawson & Scales,* for plaintiffs. *S. H. Jones,* contra.

LEWIS, J. Deveney, Hood & Co. sued out an attachment against Musgrove Burton on the ground of his absconding, and the same was, on January 18, 1898, at 4 p. m., by the sheriff levied upon a certain house and lot, and also upon a one-fourth undivided interest in 400 acres of land, as the property of the defendant. To this levy Robert H. Burton filed a claim. On the trial of the claim case in Burke superior court the following facts were substantially shown by the testimony: The attachment was introduced, showing a levy by the sheriff on the property claimed, made on January 18, 1898, and an entry of the deputy-clerk of the superior court that the attachment had been entered on the general execution docket on the same day. The declaration in attachment was filed March 14, 1898, setting forth the debt, the property levied on, and the date and hour of the levy; and the judgment rendered upon the declaration was entered on June 13, 1898. From that judgment the fi. fa. was proceeding. A tenant of the defendant in fi. fa. was introduced, and stated that at the time of the levy of the attachment he was in possession of the house and lot in Midville, Ga., and had been for several months in possession of the premises under a contract of rental from the defendant in fi. fa., Musgrove Burton, who had been in possession thereof since the death of his aunt, Sarah V. Burton, in 1896; that he talked with Robert H. Burton in reference to renting the house and lot from Musgrove Burton, before renting same. Plaintiff further introduced in evidence what purported to be the last will and testament of Sarah V. Burton. In this paper she devised the house and lot and furniture in Midville, Ga., to Musgrove Burton. The plantation of 400 acres she devised should be equally divided between R. H. Burton, Julia Bowen, Sarah J. Burton, and Musgrove Burton.

It seems this paper was not attested by any witnesses, but all of the heirs of the deceased and the legatees named in the will, including the claimant, Robert H. Burton, presented to the ordinary a petition that it be probated as the last will and testament of Sarah V. Burton, waiving all informalities with reference to its execution, stating they knew it was her desire that such disposition should be made of her property. It was accordingly probated on this application.

The claimant introduced in evidence a deed from Sarah V. Burton to Robert H. Burton, dated May 21, 1896, recorded January 26, 1898, to a certain lot of land lying in Midville, Ga., containing one and one half acres, more or less, the deed giving the boundary thereof. He also introduced a deed to himself from Musgrove Burton, defendant in fi. fa., dated March 18, 1898, recorded March 24, 1898, reciting a consideration of $300.00, and conveying a one-fourth undivided interest in the 400 acres of land levied on. The attachment docket from the superior court was introduced, showing an entry thereon, returnable to the March quarterly term of the county court, giving the amount of the debt and date and hour of the levy, but the attachment docket failed to show a description of the property levied on; nor was there any description of this property upon the general execution docket, upon which the attachment was likewise entered. The attorneys for the claimant, J. J. and S. H. Jones, testified that, soon after the levy of the attachment in this case, they made an examination of the attachment and general execution dockets. They found the entry on the general execution docket as it appeared thereon, but they found no entry on the attachment docket. It further appeared from the testimony of S. H. Jones that he went a second time and examined the dockets, and found the records as they were when first examined. Robert H. Burton, the claimant, testified that he had no notice of the levy of the attachment on the property claimed by him. He was the father of Musgrove Burton; made no investigation to learn what property was levied on, but he knew the attachment had issued; his son was in Texas, and he had no other property. Plaintiff in fi. fa. in rebuttal introduced evidence showing that, when the Joneses

made the examination of the records claimed by them, the entries were upon the dockets, including the attachment docket, just as they appeared thereon at the time of the trial of the case. This was sworn to by the clerk and sheriff. After 'the evidence closed, claimant's counsel moved for a verdict, on the ground that no notice to claimant of the levy of the attachment was shown. The court sustained the motion, and directed a verdict finding the property not subject. To this ruling exception was taken, and error is assigned thereon. ·

So far as the record shows, the evidence fails to specifically identify the one and a half acre lot to which claimant showed a deed from Sarah V. Burton, made in 1896, as the same property upon which the levy was made. But, apart from this, it appears that the defendant in fi. fa. went into possession of this lot under the bequest contained in the paper of Sarah V. Burton, devising the land to him, and this by virtue of an agreement and consent of all the heirs at law of deceased, including his father, the claimant in this case. In *Gay* v. *Sanders,* 101 *Ga.* 601, it was decided that where certain heirs at law of an intestate agreed in writing to the probate as a will of a paper which was attested by only one witness, and under such agreement it was probated by the ordinary, a distribution because of that agreement would be binding on the heirs who were sui juris and consented thereto. We do not think that there would be any question that these parties who applied for the probate of the will, and took the property thereunder, are estopped from making any attack thereon, whether the court had any jurisdiction or not. In this connection see *Mandeville* v. *Mandeville,* 35 *Ga.* 243; *Hurst* v. *Whitley,* 47 *Ga.* 366. We do not understand that counsel for defendant in error call into question the validity of defendant's title on account of defect in the execution of the alleged will under which he acquired such title, but insist that the evidence demanded the verdict, for the reason that the claimant, when he purchased from his son, had no notice that the attachment had been levied upon the land, there being a failure to record upon the proper docket a description of the land, as required by law. It appears from the record that the declaration in attachment was filed March 14, 1898, and

that the deed to the one-fourth undivided interest in the 400-acre tract of land was not executed until March 18, 1898. This declaration in attachment contained a full description of the property upon which a special lien was sought to be enforced; and we think that, after it was filed, it was general notice of the plaintiff's equity or claim to all the world. Civil Code, § 3936. In *Clark* v. *Empire Lumber Co.,* 87 *Ga.* 742, it was held that, after seizure of one's land as his property by virtue of an attachment against him, a joint deed from the husband and wife to a purchaser from them is affected by the doctrine of lis pendens, and will not prevail over the lien of the attachment. It is true that under the act of December 20, 1890 (Acts 1890-1, vol. 1, p. 208), the clerk of the superior court of each county is required to keep an attachment docket, either in connection with the general execution docket, or in a separate book provided for that purpose, showing the names of plaintiff and defendant in attachment, the court to which it is returnable, the amount claimed, the day and hour of levy, and a brief general description of the land levied upon. This portion of the act is codified in the Civil Code, § 4360, par. 6 (10). It is provided in the 2d section of this act that, "As against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding any real estate, no attachment levied upon said real estate shall be a lien on the same from the levy thereof, unless said attachment is entered upon the attachment docket of the county in which the real estate is situated, within five days from said levy." This portion of the act is codified in § 4579. Section 4532 declares: "In all cases it shall be the duty of the officer levying attachments to levy them in the order in which they came in his hands, and it shall be his duty to enter upon the same the year, month, day of the month, and hour of the day on which he made the levy. Said attachment must be entered on the execution or attachment docket by the clerk of the superior court, in order to be good against third persons, where the levy is upon land." Marginal reference is made to the Acts of 1855-6, p. 30, and the Acts of 1892, p. 58. The first sentence in that section of the code is embraced in the Acts of 1855-6 referred to. The act of 1892

has no reference whatever to either provision in that section, but simply amends the act approved September 19, 1891 (Acts 1890-1, pp. 74-5), in relation to the lien of attachments in cases of a conflict between attachments, and also the lien of attachments where there is a contest between them and ordinary judgments or suits. It will be noted, however, that section 4532 simply declares that the "attachment must be entered on the execution or attachment docket by the clerk of the superior court, in order to be good against third persons, where the levy is upon land." It will be observed, therefore, that neither one of these sections of the code prescribes that in order to bind third persons a description of the property attached has to be entered upon the attachment docket. That provision is embodied in section 4360 (10) of the Civil Code, above cited, which section has no reference whatever to what notice shall be given in order to affect third parties, etc. Construing the law, then, in the light of the sections of the code alone, it might with force be contended that a description of land levied upon by attachment is not necessary in order to charge third persons without actual notice, but that it would be only sufficient to charge such notice if the attachment was entered on the attachment docket of the county in which the real estate is situated. The evidence discloses that the attachment was so entered in this case. Section 4532 of the Civil Code, in reference to notice to third parties, does not seem to have been taken from any act of the legislature; but, construing it as a part of the law upon the subject enacted at the time of the adoption of the Code, it should also be construed in connection with the act of 1891, as that act is likewise embodied in a subsequent section of the Code, to wit, section 4579; and evidently section 4532 was not intended to change or modify the provisions in section 4579, and must refer to third persons who have no notice. Indeed, if section 4579 had been left out of the code entirely, section 4532 we do not think could have applied to third persons chargeable with notice of the levy of the attachment, even though the same had not been recorded on the attachment docket; for, as a general rule, no notice by record is necessary to bind parties who have actual knowledge of facts that charges them in law with notice. There was testimony

that this attachment was entered on the attachment docket on the very date of the levy; all the entries made thereon required by the statute, except a description of the land levied upon.

Conceding, therefore, that this failure to describe the land on the record constituted the entry invalid as a notice to third parties, yet this rule, under the law, could apply to no one but those acting in good faith and without notice. We think there was certainly enough developed by the testimony in this case for the jury to infer the claimant was not without notice of the levy of this attachment. He was certainly upon sufficient notice to put a prudent man upon inquiry. He knew that the attachment had issued. He knew that the property upon which it was levied was the only property owned by his son, the defendant in fi. fa. His attorneys went to the docket with the view of seeing if this particular statute had been conformed to by the levying officer. These attorneys saw that the attachment had issued, and had been levied upon property. If, therefore, either the claimant or his attorneys had knowledge of such facts in connection with this transaction as would not only serve to put them upon inquiry as to the true condition of things, but actually knew enough to infer that the identical property had been seized under this attachment, he would in law be chargeable with notice, and could not be said to be acting in good faith and without notice when he purchased the land. *Hunt* v. *Dunn,* 74 *Ga.* 120; *Montgomery* v. *Hunt,* 99 *Ga.* 506. When the claimant's attorneys in this case saw that an attachment had been issued and levied upon the property of this defendant, they could readily have inferred it was on this identical property, as it was all he had, according to the testimony of the claimant. If they, as attorneys of claimant, were making this investigation in the interest of their client, then the claimant is chargeable with whatever notice such an agent had. Civil Code, §3027; *Prater* v. *Cox,* 64 *Ga.* 706; *Hillyer* v. *Brogden,* 67 *Ga.* 26. Applying these rules of law to the facts in this case, we think there was ample evidence for a jury to have inferred that this claimant was not a bona fide purchaser without notice of a levy on the property in dispute; and, under all the facts and circumstances, we can not say that there was no evidence upon which a jury

could not even have drawn the inference that this purchase was made with the view of defrauding the creditors, and preventing them from subjecting the property of the defendant in fi. fa. to their attachment lien. We think, therefore, there was error in not submitting this issue to the jury, and in directing a verdict for the claimant.

*Judgment reversed. All the Justices concurring.*