No. 18,792.

A. E. HESS (C. F. HARDER and S. C. HOLMES, *Appellants*) v. E. S. CONWAY et al., *Appellees.*

SYLLABUS BY THE COURT.

1. JUDICIAL SALE—*Certificate of Purchase—Redemption—Knowledge by Attorney Imputed to His Principal.* Knowledge by an attorney for the holder of a certificate of purchase of land sold at a judicial sale of a contract which he had negotiated between the purchaser and the landowner relating to redemption, and of the payment of money, which came into his hands, by way of redemption according to the contract, will be imputed to an assignee of the certificate who soon afterward employed the same attorney to represent his interests, when the knowledge was present in the mind of the attorney throughout his second employment.

2. SAME—*Knowledge of Agent Imputed to Principal.* Knowledge that the attorney had obtained possession of the redemption money paid under the contract, imparted to an agent of the assignee who had active charge of his principal's interests as a holder of the certificate, will be imputed to the principal.

3. SAME—*Holder of Certificate of Purchase—Estoppel to Deny Redemption Has Been Effected.* With knowledge of the contract and of the possession by his attorney of the money paid for redemption, the assignee of the certificate acquiesced and permitted the landowner to complete redemption by paying to the clerk of the district court the remainder of the sum necessary for that purpose. *Held,* after the period of redemption expired the holder of the certificate was estopped to deny that redemption had been effected.

4. SAME—*Money Paid Attorney for Redemption Rightfully Ordered Returned to Court.* The portion of the redemption money obtained by the attorney not having been paid to the holder of the certificate, it belonged in the custody of the clerk of the district court and the court had summary jurisdiction to compel the attorney to restore to the treasury of the court the money which he had diverted.

5. SAME—*Unprofessional Conduct of Attorney—Power of Court to Discipline.* The facts were developed on the hearing of a motion filed by the attorney on behalf of the certificate holder to require the sheriff to execute a deed. The only substan-

tial issues were those involving the professional conduct of the attorney, who was a witness and who conducted the pro- ceedings as an attorney. *Held,* the court was authorized to exercise its disciplinary power over the attorney as one of the results of the investigation.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed July 7, 1914. Affirmed.

*C. W. Shinn,* of Neodesha, and *S. C. Holmes,* of Yates Center, for the appellants.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was commenced originally by Hess to foreclose a real-estate mortgage given by Con- way. Judgment was rendered for the plaintiff and the property was sold. After the period of redemption ex- pired Harder, as the holder of the certificate of pur- chase, presented it to the sheriff and demanded a deed. On the refusal of the sheriff to comply with the demand Harder filed a motion to require him to do so. The motion was resisted by Conway, who claimed that he had redeemed. Judgment was rendered in his favor, and Harder appeals.

There are some serious disputes in the briefs con- cerning the true facts in the case. It would serve no beneficial purpose to print the evidence and to discuss it at length, as would be necessary if it were discussed at all. There are some unfortunate conflicts of testimony to be resolved, and some inferences are to be derived from pregnant facts and circumstances and from fail- ure to frankly clear up some matters left in doubt. Consequently, the facts upon which the questions of law arise will be stated as the court evidently found them to be by its general finding in favor of Conway, in which finding this court is constrained to concur.

The judgment of foreclosure was rendered on November 16, 1910, and included a personal judgment against Conway for $2612. On December 14, 1910, an order for the sale of the property was issued. On December 30, 1910, a building forming a part of the mortgaged premises was destroyed by fire. On January 19, 1911, the sheriff's sale occurred, which was confirmed on February 6, 1911. The sale was made to the plaintiff, Hess, and the certificate of purchase was issued to him, but it was immediately assigned to Harder in consideration of the payment of the sale price, from which the costs were deducted. The assignment of the certificate to Harder was prepared by S. C. Holmes, the attorney for the plaintiff, who thereafter had professional charge of Harder's interests as occasion required. Harder's son, F. H. Harder, was present when the certificate of sale was assigned.

The building which burned was insured, and on January 9, 1911, Hess filed a motion asking that Conway be required to bring into court the policies of insurance and any moneys received thereon. It was doubtful whether or not the insurance was legally collectible, and W. E. Hogueland, attorney for Conway, agreed with Holmes, as attorney for Hess, to effect a settlement with the insurance company and to apply the proceeds to the redemption of the property. Thereupon the motion which had been filed was abandoned. This arrangement was made three days before the sale was to take place. On February 24, 1911, Hogueland paid to the clerk of the district court insurance money which he had collected in the sum of $500 and applied it to the redemption of the property, taking the clerk's receipt accordingly. On the next day Holmes drew this money from the clerk. On March 31, 1911, Hogueland received a draft for insurance money payable to the order of Conway, Hess, and Holmes. After Conway had indorsed the draft Hogueland turned it over to Holmes,

who received the money upon it. On July 15, 1912, Conway paid to the clerk of the district court the remainder of the sum necessary to effect redemption.

The testimony of Hess was taken by interrogations propounded to him and answered under oath on November 22, 1912. In answer to one of the questions Hess stated that since February 24, 1911, Holmes had not sent him any money on the Conway judgment. Following this interrogatory was another asking him to state when and how much money he had received from Holmes on the Conway judgment, if any had been received, but the second interrogatory was unanswered. Some months later Hess made affidavit that he received from Holmes personal checks for the proceeds of the insurance money, which he cashed, but he did not modify his earlier testimony. The insurance money was more than sufficient to satisfy the excess judgment against Conway, if so applied, but the judgment has never been released.

The certificate of purchase included a hotel building at Durand, which needed insurance, and on June 1, 1911, Holmes presented to the court an application for the appointment of a receiver in order that insurance might be effected. The application was made in the name of C. F. Harder's son, F. H. Harder, and was supported by an affidavit of F. H. Harder that he owned the certificate of purchase. On October 23, 1911, Holmes again presented a motion in the case supported by his own affidavit that F. H. Harder was the owner of the certificate of purchase. This affidavit stated that F. H. Harder had advanced the sum of $25.80 to insure the property and the purpose of the motion was to secure the appointment of a receiver to collect rents to pay this sum and to make some repairs. C. F. Harder was in fact the owner of the certificate of purchase at all times subsequent to its assignment to him, and F. H. Harder and Holmes were acting for him in the various matters referred to.

While F. H. Harder was acting for his father, Conway had a conversation with him in which he was told that Conway had paid $1075 to his father's attorney, Holmes, for the purpose of redeeming the property. Before the final payment by way of redemption was made Conway had a conversation with Holmes in which Conway inquired the amount necessary to redeem after deducting the sums already paid. Holmes replied that he did not have all the dates of payment but that the clerk of the court had them and that the clerk would furnish the figures. Holmes had possession of the insurance policy which had been procured on the Durand hotel. After the last payment by way of redemption had been made Holmes, without objection, delivered the policy to Conway upon Conway's paying for it. The period of redemption expired on July 19, 1912. On August 12, Holmes as Harder's attorney filed the motion which is the basis of the present controversy.

There were two full hearings on the motion to require the sheriff to make a deed, one in August, 1912, and the other in February, 1913. C. F. Harder filed an affidavit in the cause but he gave no testimony in denial of Conway's contention that Holmes had been his attorney from the inception of his interest, or that he was ignorant of the payment of the insurance money to Holmes under the agreement that it would be applied to the redemption of the property. The clerk of the court made the following certificate, which was read in evidence:

"I hereby certify that beginning with the November term, 1902, of this court the name of C. F. Harder appears on the trial dockets of this court as a litigant forty-two (42) times, and at each of said times S. C. Holmes has appeared as his attorney. I also certify that at each of said terms of court during the 10 years from November, 1902, to and including November, 1912, except November, 1910, March, June and Novem-

ber, 1911, and March, 1912, the name of C. F. Harder appears as litigant on the docket of this court and S. C. Holmes appears as his attorney."

The property involved is estimated to be worth $3500. If redemption did not occur, Harder would be the beneficiary of a good bargain and the excess judgment in favor of Hess above the sale price would be satisfied.

Section 488 of the civil code reads as follows:

"The mode of redemption as herein provided is by paying the money into the office of the clerk of the district court for the use of the persons thereunto entitled. The person so redeeming, if not the defendant owner in execution or order of sale, must also file his affidavit or that of his agent or attorney, stating as nearly as practicable the amount still unpaid due on his claim. The clerk shall give him a receipt for the money, stating the purpose for which it is paid. He must also enter the same upon a book kept for that purpose, with a minute of such redemption, the amount paid, and the amount of the lien of the last redemption or as sworn to by him."

Harder argues that nothing less than actual payment to the clerk of the district court will effect redemption, and cites the case of *Stewart v. Park College,* 68 Kan. 465, 75 Pac. 491, in which it was said:

"The right to redeem and the mode of redemption of real estate, after sale by the sheriff upon execution, special or general, or order of sale, are fixed by statute." (p. 467.)

The judgment in the case cited was entered in Wyandotte county. The facts upon which equitable redemption was claimed were the following:

"In his petition plaintiff further averred that frequently before the expiration of the eighteen months from the date of sale he went to the place of business of the board of trustees, in Missouri, with a certified check for the full amount of the judgment and interest thereon, with a view and for the purpose of redeeming the premises from the foreclosure sale; that before each effort made by him to redeem he notified the

board of trustees of the fact that he would call and make such redemption, and that upon each occasion they failed to be present." (p. 466. )

The court said that Stewart not only did not comply with the statute but made no effort to do so.

The statute very properly provides for redemption by payment to the clerk of the court, who acts as an officer of the law and not as the agent of any party in interest. But interested parties may bind themselves by contracts departing from the statute as to time, terms, and mode of redemption, and they may otherwise place themselves in such situations that a strict application of the letter of the statute would accomplish a fraud in favor of the person demanding it. If in the case of *Stewart v. Park College* Stewart had found the members of the board of trustees at their office and they had accepted his certified check for the full amount of the judgment and interest, they would have been estopped to dispute the fact that redemption had been made. In all cases of the character indicated the court will deal with the question of redemption as the law and as equity and good conscience may require.

On the eve of the sheriff's sale Holmes and Hogueland, as attorneys for their respective clients, agreed that the insurance money should be applied to the redemption of the land. Hess purchased at the sheriff's sale subject to this condition, and when he assigned the certificate of purchase he and Holmes knew that the insurance money would go to redeem the land and not to satisfy the excess judgment. This is the turning point in the case. Mr. Holmes claims he understood the agreement with Mr. Hogueland differently. After carefully considering all the strong arguments for his view this court, as already stated, feels that the trial court was best able to determine the matter. The result is that Holmes could draw the first payment of insurance money from the clerk of the court, who had received

and receipted for it for redemption purposes, for the benefit of no one but the holder of the certificate of purchase, who at that time was Harder; and Holmes received the proceeds of the draft for the second installment of insurance money for the benefit of Harder. Soon afterwards Holmes is found in court engaged in the protection of Harder's interests as a holder of the certificate of purchase. Holmes had complete knowledge of all the facts relating to the insurance money. Harder's son and agent, F. H. Harder, was informed that Holmes had received $1075 to apply in redemption of the premises, and Harder himself is noncommittal on the subject of his knowledge.

The general finding doubtless includes a finding that Harder himself had knowledge of the facts relating to the insurance money. If not, the actual knowledge of his attorney will be imputed to him. It was the duty of the attorney to communicate his knowledge to his principal, the presumption is that he did so, and the principal is not allowed to dispute the presumption. (2 R. C. L. 962.)

Let it be conceded that in making the transfer of the certificate from Hess to Harder, Holmes acted as attorney for Hess. When he was employed by Harder to protect Harder's interest in the land as a holder of the certificate of purchase, in the very matter of insurance, it could not have escaped his memory that he had received $1075 of insurance money to apply on the redemption of that certificate.

"Notice to an agent or attorney is notice to his principal or client in regard to the matter in which he is engaged; and where a purchaser employs the same attorney as the vendor, he will be affected with notice of whatever such attorney acquired notice of, in his capacity of attorney for either vendor or purchaser, *in the transaction* in which he was so employed. Notice to the attorney which will bind the client must be notice in the particular transaction in which the client has employed him. So, where one of two matters transacted

by the same attorney, though the former was for another client, follows so soon after the other that it clearly appears that the earlier transaction can not have been out of the mind of the attorney when engaged in the latter, there is no ground for restricting the notice to the client to the second transaction, but he will be affected with notice of both." (*Melms and others v. Pabst Brewing Co. and others,* 93 Wis. 153, 166, 66 N. W. 518.)

If Harder himself did not know the facts relating to the insurance money, the actual knowledge of his son, F. H. Harder, acquired while in active charge of his interest in the land as a holder of the certificate of purchase, will be imputed to him under well-settled principles of law.

With knowledge of the facts, Harder acquiesced in the application which had been made of the insurance money and suffered Conway to redeem on that basis. If Harder desired to repudiate the application of the insurance money which had been agreed on, and which Conway understood had been made, he should have done so when reminded that his attorney held for him $1075 which Conway had paid by way of redemption. After that he could not remain silent and thereby induce Conway to complete redemption by paying only the balance above the insurance money, and then after the period for redemption had expired deny that redemption had been accomplished.

The court of its own motion ordered Holmes to deposit in the office of the clerk of the district court, within thirty days, the sum of $1075, with interest on $500 from February 25, 1911, and interest on $575 from March 31, 1911, at ten per cent per annum. The sum so ordered to be deposited, together with the sum of $783.03 already on deposit as redemption money, was directed to be used in the redemption and cancellation of the certificate of purchase. The cause was reserved for such orders and decrees as may be necessary to carry into effect the other orders made. Holmes appeals.

Holmes insists that he was not a party to the action, that he had not been served with process, that no pleadings were on file charging him with liability which he could answer, and that the evidence was insufficient to sustain the order.

The question as to what became of the money is interesting but not material. In his affidavit, which afforded him full liberty to express himself, Hess did not say that he was mistaken in his former testimony, or that he did not understand the questions or the nature of the information sought, and did not in any way excuse, explain or detract from the effect of his deposition. Reading the affidavit and the deposition together, he says he received the personal checks of Holmes for the insurance money, less attorney's fees, but not on the judgment against Conway. Leaving this subject at one side, on February 24, 1911, Conway through his attorney paid to the clerk of the district court the sum of $500 as redemption money and took the clerk's receipt accordingly. Holmes could rightfully withdraw this money for no purpose unless to pay it to Harder. The draft for $575 which he cashed was redemption money also, and if not paid to Harder ought to be in the hands of the clerk. It is conceded that Harder received none of the money. The order therefore is a summary one made by the court in a pending proceeding to secure restoration to the treasury of the court of moneys arising from the litigation, which the attorney has diverted.

The ultimate destination of the money is not now important. While the deposit when made is to inure to the benefit of Harder, the order was not made for his express benefit, but to protect the integrity of the court itself in the course of the administration of justice.

It does not require the citation of authorities to demonstrate the jurisdiction of the court to exercise summary disciplinary power to enforce honorable conduct on the part of its own officers. Usually the power is invoked to compel attorneys to do justice toward their

clients in matters connected with litigation, but it may be exercised to compel the performance of duties to others than clients, and it extends to any matter in which the attorney has been employed because of his professional character. (*Lynde v. Lynde,* 64 N. J. Eq. 736, 52 Atl. 694, 58 L. R. A. 471; *Anderson v. Bosworth,* 15 R. I. 443, 8 Atl. 339, 2 Am. St. Rep. 910; *In re A Solicitor,* 2 K. B. 539 [1907] ; 2 R. C. L. 1026.)

Beyond this, however, the court has power to make disciplinary orders to remedy breaches of professional duty, independent of the rights of clients and others.

"The principle  . . .  is that the Court has a punitive and disciplinary jurisdiction over solicitors, as being officers of the Court, which is exercised, not for the purpose of enforcing legal rights, but for the purpose of enforcing honourable conduct on the part of the Court's own officers. .That power of the Court is quite distinct from any legal rights or remedies of the parties, and can not, therefore, be affected by anything which affects the strict legal rights of the parties. . . .  So, if a solicitor obtains money by process of law for his client, quite irrespective of any legal liability which may be enforced against him by the client, he is bound, in performance of his duty as a solicitor, to hand it over to the client, unless he has a valid claim against it. If he spends it, or if, still having it, he refuses to hand it over, he commits an offence as an officer of the Court, which offence has nothing to do with any legal right or remedy of the client." (*In re Grey,* 2 Q. B. 440, 443 [1892].)

In the present case the court was acting in its own behalf to secure the return of money belonging in its own custody.

By motion directed against the sheriff filed for his client, Harder, the attorney himself instituted the investigation of his professional conduct. That was the only substantial issue in the case, and he was fully heard, both as a witness and as an attorney, in justification of his course. The evidence which justifies the denial of an order against the sheriff justifies the order against him.

The judgment of the district court is affirmed.