*W. L. Bryan,* for plaintiffs in error.

*Hartsfield & Conger,* contra.

---

## CITIZENS BANK OF VIDALIA *v.* CITIZENS & SO. BANK.

1. The assent of the executor to a devise of land may be either express or implied, and may be presumed from the conduct of the executor.

(a) Where the devisees and executors are the same persons, and the devisees dispose of the land in their individual capacity, the assent of the executors to the legacy will be presumed.

(b) The assent given to a devise of land to a tenant for life or widowhood will inure to the benefit of remaindermen in fee.

2. When the assent of the executor is once given to a devise of land, it is generally irrevocable, although the assets of the estate prove insufficient to pay the debts of the estate. Such assent perfects the inchoate title of the legatee; and the land is no longer a part of the estate of the testator, and is not subject to be sold under an order of the ordinary to pay his debts, and is not subject to levy and sale under an execution based upon a judgment obtained in a suit commenced thereafter upon a claim due by the testator.

3. An executor, having notice of an outstanding debt against his testator, can not administer to himself, as devisee, any portion of the realty in kind, so as to hold it free from the lien of a judgment de bonis testatoris subsequently rendered against him in favor of the creditor.

4. Where a bank, bona fide, for value, and without notice that executors who are devisees of property under the will of their testator have administered such property to themselves with notice of an outstanding debt against such testator, lends money to such devisees and takes

their deed to such property to secure the same, such bank will be protected against the lien of a judgment de bonis testatoris obtained on such debt of the testator in a suit commenced subsequently to such administration of the property.

(*a*) Notice to an attorney is notice to the client employing him, and knowledge of an attorney is knowledge of his client, when such notice and knowledge are obtained by the attorney in and about the subject-matter of his employment.

(*b*) Where an attorney employed by a bank to examine the title of devisees to property under a will, for the purpose of making to such devisees a loan to be secured by a deed to such property, such devisees being the executors thereof, is notified by a creditor of the testator that such executors have administered to themselves the property devised to them under the will, without paying the debt of the testator to such creditor, such notice to the attorney is notice to the bank; and the title of the bank to such property given to secure such loan must yield to the lien of a judgment de bonis testatoris obtained on such debt of the testator in a suit commenced after such administration of such property and after the bank had so acquired title thereto as security.

(*c*) The court erred in ruling out evidence offered by the plaintiff in fi. fa., tending to show such notice to such attorney, there being evidence in the record authorizing the finding that the attorney was the attorney of the bank in this transaction; and the rejection of such evidence rendered erroneous the subsequent direction of a verdict in behalf of the claimant.

5. The court below did not err in admitting the evidence set out in the fourth and fifth grounds of the motion for new trial, and in rejecting the evidence embraced in the eighth ground of the motion.

6. The refusal of the court to direct a verdict in favor of the plaintiff in fi. fa. does not require the grant of a new trial, even if it would have been proper for the court to direct such verdict.

No. 4617.  March 11, 1925.

Claim.  Before Judge Hardeman.  Toombs superior court.  October 9, 1924.

On January 14, 1921, J. E. French died testate.  In his will he named his wife, Annie French, and his son, W. T. French, executors thereof.  The will was probated in common form on February 7, 1921, and on said date the executors qualified.  The testator devised his residence in the City of Vidalia to his wife during her life or widowhood, with remainder over to his daughter, Genevieve French McArthur, and to his sons, W. T. and J. H. French, and an unimproved lot in said city to his son, W. T. French.  On February 15, 1922, this daughter and these sons conveyed their remainder interests in said dwelling to the life-tenant, Annie French.  On the same date Annie French and W. T. French

conveyed the residence and the vacant lot to the Citizens & South-
ern Bank, to secure a loan of $2500. The Citizens Bank of Vidalia,
on March 9, 1922, filed suit against the executors of J. E. French,
on promissory notes aggregating $6500, made by W. T. French and
indorsed by J. E. French. Judgment was thereafter rendered in
favor of the plaintiff, on which execution issued. On April 3,
1923, the Citizens & Southern Bank, under a power of sale con-
tained in its security deed, sold said property and became the
purchaser thereof. Shortly after said sale the Citizens Bank of
Vidalia levied its fi. fa. on this property; and the Citizens & South-
ern Bank filed a claim thereto.

On the trial of the claim J. Wade Johnson testified for the
claimant as follows: I am an attorney at law. I examined the
title for the Citizens & Southern Bank to the property covered by
the security deed from Annie French and W. T. French to
this bank, the property involved in this claim. At the time of
that examination I was familiar with the fact that the chain of
title came through the will of J. E. French. I abstracted the
will and chain of title. Whether I ascertained that a year had
expired from the qualification of the executors is immaterial. The
records speak for themselves. As well as I recollect, it was just
a little more than a year. At the time I made this examination
W. T. French, who was one of the executors for his father, ac-
companied me. I asked him if there were any debts against the
estate not settled, and he stated there were not. Annie French
advised me that there were no debts. The records did not disclose
anything further than that there were some executions of record
against W. T. French. These executions were canceled. I found
no judgments against J. E. French or his estate. I handled the
sale of this property under the security deed. It was sold on April
3, 1923. This land had not been levied on at the time of the
sale. At the time this loan deed was made Annie French was
living in the residence. No one was in possession of the vacant
lot. Mrs. French claimed the residence as her individual prop-
erty, both at the time the security deed was executed and after
the sale. (Cross-examination.) I was not employed by the Citizens
& Southern Bank to draw the papers and examine the title when
this loan was made. I was informed by W. T. French that he had
made arrangements to borrow this amount of money from the bank,

and that he wanted me to investigate the title, that this was one of the requirements of the bank. The bank required that I examine the title. I examined the title and reported to the bank. I was acting for the protection of the bank, but I was employed directly by French. He employed me to make an investigation for the bank at the instance of the bank, and the bank made the loan on the face of my report. I know I made a report on the title, and drew up the deed to secure this debt, and delivered it to W. T. French, and he took it to Savannah, or said he was going to. I made a report in writing. W. T. French is one of the defendants in this fi. fa. I did not consider myself an attorney for the bank. Not until this case came up was I employed by the Citizens & Southern Bank. Mr. Cohen was up here with me at the time of this transaction. He came up to investigate the security, to see whether or not it was all right. He was a representative of the bank, I suppose. He was not an attorney, and relied on my judgment about the title, I suppose. Nobody else examined the title that I know of, and the only people I talked to about this thing are W. T. and Annie French.

P. R. Cohen testified for claimant: Prior to the time this security deed from Annie F. and W. T. French to the bank was given upon the real estate described, I don't think I had ever seen it. I represented the Citizens & Southern Bank in passing on the value of this property and assented to closing the loan on it. I was in Savannah, and Mr. French was in the office and wanted to get this loan made, and I told him Mr. Schurn and I would come up and see if it was worth enough to make a loan on it. I came to Vidalia and examined the property. Mrs. French was living in the house. There was nobody on the vacant lot. Mrs. French said there was no indebtedness against the property. I was the sole representative of the bank in negotiating this loan with Mr. French up here. I am a director of the Citizens & Southern Bank, and was such when this transaction was closed. Mr. Johnson was making the title for Mr. French. I was relying on Mr. French's attorney. Mr. French got Mr. Johnson to look into it; I did not. I did not know whether the bank or some one else at the bank had Mr. French to procure Mr. Johnson to make this examination. I did not confer with Mr. Johnson to determine whether there was a good title. I did not confer with him while I was up

here. He hadn't looked into it when I was up here. We went around and looked at the property and called on Mrs. French. It took some time to search the record. I think W. T. French had been in business in Savannah and had become indebted to the bank. The bank did have security. They did not have this house and lot as security. It is my understanding that they wanted to get this additional security. I could not say whether any money was paid over to Mr. French at the time this deed was executed. I don't know the amount of the pre-existing indebtedness. It was a substantial amount. I am pretty sure it was over $2000.

E. L. Schurn testified for claimant: I am vice-president and cashier of the Citizens & Southern Bank. I am familiar with the transaction evidenced by the security deed. I handled the loan to W. T. and Annie French. I did not know, when the loan was made, whether there were any debts against the estate of J. E. French. I did not know anything about French's affairs. I relied on Mr. Johnson. I think it was at my request that he acted in this manner. We suggested that Mr. Johnson look into the matter. I would not have made the loan without having the title examined. (Cross-examined.) The examination was to be made by an attorney selected by me. Then the loan was to be made without any expense to the bank. Mr. French was to pay the lawyer, and did. Abstract fees and recording fees and stamps were to be paid for by Mr. French, and he would get the net proceeds of the loan after deduction of the expense. Mr. Johnson, although paid out of Mr. French's money or the money loaned him, was my attorney in this transaction to that extent. (Counsel for claimant admitted this.)

The claimant introduced the will of J. E. French; a quitclaim deed from W. T. French, J. H. French, and Mrs. Genevieve French McArthur to Mrs. Annie French, dated February 15, 1922, conveying the property in dispute; and a warranty loan deed, dated February 15, 1922, from Mrs. Annie French and W. T. French to the Citizens & Southern Bank for a consideration of $2500, conveying the premises in dispute, reciting that this property was owned by Mrs. Annie French, having her residence thereon. It also conveyed the vacant lot given by testator to W. T. French, and recited that said vacant lot was owned by the latter, and that it was executed to secure the promissory notes mentioned above.

8

Also, a deed dated April 3, 1923, from Mrs. Annie French and W. T. French, by their attorney in fact, the Citizens and Southern Bank, consideration being $2000, conveying to itself the same property embraced in the loan deed, reciting the execution of said loan deed, the power of sale conferred thereby, compliance with said power, and the bidding in of said property for $2000 by said grantee. This deed was properly executed and recorded. Also, the petition, process, and entry of filing in the case of the Citizens Bank of Vidalia *v.* Annie French and W. T. French, executors, which was filed on March 9, 1922, attached to which as exhibits and made a part thereof were the notes sued on, aggregating $6500 principal, said notes being made by W. T. French and indorsed by testator, J. E. French; two notes aggregating $2500 secured by said loan deed; and a copy of the tax return of Annie French in Toombs County, sworn to May 26, 1922, for said year, showing the return of the premises in dispute as her property at a valuation of $2000.

Plaintiff in fi. fa. introduced the original fi. fa. of the Citizens Bank of Vidalia against Annie French and W. T. French, with the levy thereon, the principal amount of which was $6500, besides interest, attorney's fees, and cost.

The court directed a verdict for the claimant. Plaintiff in fi. fa. moved for a new trial on the general grounds, and by amendment added the following grounds:

(4) Plaintiff objected to the introduction by claimant of the above deed from W. T. French and J. H. French and Genevieve French McWhorter to Annie French, covering the property in dispute, on the ground that it was irrelevant in the absence of any showing or proof of the assent of the executors to the devise to said remaindermen, said deed reciting that it was made under the will by the grantors as remaindermen, and because only an implied assent of the executors was shown, and an implied assent is not valid and can not be set up as against creditors, including plaintiff in fi. fa. Plaintiff in fi. fa. also objected to the introduction of the warranty loan deed from Annie French and W. T. French to the Citizens & Southern Bank, on the same grounds. The court overruled these objections and admitted said deeds.

(5) Plaintiff moved to rule out the testimony of J. Wade Johnson, that he made inquiry of W. T. French and Annie French as to the existence of any debts due by the estate, and that they

informed him there were none, on the ground that said testimony was irrelevant. The court overruled said motion.

(6) At the conclusion of the evidence for claimant, plaintiff in fi. fa. moved the court to direct a verdict for plaintiff in fi. fa., on the ground that claimant had not made out a prima facie case and had shown no legal title sufficient to sustain said claim. The court refused so to direct.

(7) J. F. Darby, a witness for plaintiff in fi. fa., testified that during 1922 he had a conversation with J. Wade Johnson with reference to the property in dispute, that he heard the Frenches were about to involve said property and understood that Johnson was going to pass on the title and represented the Citizens & Southern Bank; and witness went up to Mount Vernon to see him; and he told witness the whole thing, and that they had sent him the papers to pass on, and that he was going to abstract the title and recommend the loan; witness told him about the estate being involved both ways by Mr. French, Mrs. French, and W. T. French, and that he couldn't see how they could make a legal loan, and Johnson said they could, that the bank had lived over its rights by not filing suit within twelve months, and he was going to recommend the loan; this was on Sunday, and during the next week Cohen came down and went to see Mrs. French, and later on they made the loan. Johnson told witness he was passing on it for the Citizens & Southern Bank, and showed witness the papers and abstract of the will, which witness had never seen until then. Witness was vice-president and a director of the Citizens Bank of Vidalia; he told Johnson the French estate owed the Citizens Bank, and that the old lady was indorser on the papers, and also the young man and old man, and witness did not see how he could make the loan. This indebtedness was the one on which they now have judgment. Counsel for claimant moved to rule out said testimony. The court sustained the motion, ruling that as a matter of law notice to Mr. Johnson under this record is not notice to the bank, as Johnson was only employed to make an abstract of the title.

(8) Plaintiff in fi. fa. offered to prove by W. J. DeLoach that on the day of the sale of the property under the security deed from Annie and W. T. French to plaintiff in fi. fa., and after the advertisement thereof had been read, he made the public statement

that the Citizens Bank of Vidalia had the day before levied its execution on the same property, that the Citizens Bank of Vidalia held an indebtedness represented by that execution against the estate of J. E. French or the executors representing the estate. Counsel for claimant objected on the ground that this was long after the security deed was taken. The court sustained this objection and ruled out this testimony.

(9) At the conclusion of the testimony counsel for claimant moved the court to direct a verdict for claimant sustaining the claim and finding the property not subject to the levy of plaintiff's fi. fa. The court sustained said motion and directed said verdict; to which judgment plaintiff in fi. fa. excepted on the ground that it was contrary to law, (a) because no assent of the executors to the devise in the will, express or implied, was shown by claimant, (b) because assent of executors can not be implied so as to defeat the rights of a creditor, such as plaintiff in fi. fa., and (c) because it appears that the Citizens & Southern Bank was not a purchaser for value as to the home property, the evidence showing that said property was owned wholly and in fee simple by Annie French, and it was so recited in the loan deed, and the evidence showing that no consideration for such loan deed flowed to her, and therefore a conveyance by her of said home place to said bank was without consideration and voluntary; that the only consideration for said deed was the securing of the indebtedness of W. T. French to said bank, and the only property conveyed by him as such security was the vacant lot described in said deed.

*Smith, Hammond & Smith* and *W. M. Lewis,* for plaintiff.

*Hitch, Denmark & Lovett* and *J. Wade Johnson,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. The assent of the executor to a devise of land may be either express or implied. Such assent may be presumed from the conduct of the executor. Civil Code (1910), § 3896; *Jordan* v. *Thornton,* 7 *Ga.* 517; *Parker* v. *Chambers,* 24 *Ga.* 518; *Thursby* v. *Myers,* 57 *Ga.* 155. When the devisees and executors are the same persons, and the devisees dispose of the land in their individual capacity, the assent of the executors to the legacy will be presumed. *Thursby* v. *Myers,* supra; *Vanzant* v. *Bigham,* 76 *Ga.* 759; *Bell* v. *Gay,* 142 *Ga.* 366 (82 S. E. 1071). The assent given to a devise of land to a tenant for life or widowhood will inure to the benefit of

remaindermen in fee. *Jordan* v. *Thornton, Parker* v. *Chambers, Thursby* v. *Myers,* supra; *Watkins* v. *Gilmore,* 121 *Ga.* 488 (2) (49 S. E. 598); *Almand* v. *Almand,* 141 *Ga.* 372 (2) (81 S. E. 228); *Moore* v. *Turner,* 148 *Ga.* 77 (95 S. E. 965).

2. When the assent of the executor is once given to a devise of land, it is generally irrevocable, although the assets of the estate prove insufficient to pay the debts of the estate. Such assent perfects the inchoate title of the legatee; and the land is no longer a part of the estate of the testator, and is not subject to be sold under an order of the ordinary to pay the debts of the testator. *Watkins* v. *Gilmore, Moore* v. *Turner,* supra. So "where property of the testator was turned over to the legatees by his executor before the commencement of a suit against the latter upon a claim alleged to be due by such testator, such property is not subject to levy and sale under an execution based on a judgment obtained in such suit." *Castellaw* v. *Guilmartin,* 58 *Ga.* 305. So ordinarily where the executor assents to a devise of land and puts the legatee in possession, this amounts to an administration of the land by the executor, and, in the absence of fraud, completes and perfects the inchoate title of the devisee, so that the land is no longer a part of the estate of the testator, and can not be sold under an order of the ordinary to pay his debts, nor under a judgment subsequently obtained against the executor upon an indebtedness of the testator.

3. But to the general rule last announced there is one exception, which rests upon sound law and good morals. Judge Bleckley states this exception in this language: "An executor, having notice of an outstanding debt against his testator, can not administer to himself, as devisee or heir at law, any portion of the realty in kind, so as to hold it free from the ordinary legal lien of a judgment de bonis testatoris subsequently rendered against him in favor of the creditor." *McMillan* v. *Toombs,* 79 *Ga.* 143 (4 S. E. 16). Judge Bleckley in that case well says: "There is no case in which an executor or administrator has been suffered to administer to himself against a creditor of whose claim he had notice. If in a regular and legal method he administers to others, and there is no fraud, that will do; but we have not found a case where he has administered to himself with full notice, and then defied the creditor when the execution came against him." In the

instant case the executrix and executor were devisees of the land in dispute. The executrix was the life-tenant. The executor and two other children of·the testator were remaindermen. With actual knowledge on the part of the executor of the debt of the testator to the Citizens Bank of Vidalia, and with the fair presumption that this creditor had given notice of its claim to the executor and executrix, the latter, within a few days after the expiration of the twelve months in which the creditor was prohibited from bringing suit on its claim against the testator, administered to themselves as devisees the premises in dispute. In these circumstances their title thus acquired must yield to the lien of a judgment de bonis testatoris subsequently rendered against them in favor of the creditor.

4.    But how stands the bank which acquired from such devisees title to this property to secure a loan? If the claimant bank acted bona fide, for value, and without notice of such maladministration of this property, then its title would be superior to the lien of this judgment. The plaintiff in execution offered testimony to prove that the claimant, before acquiring title to this property, had notice and knowledge of the maladministration of this property by the executors. This testimony was to the effect that the cashier of the plaintiff bank, learning that the claimant contemplated making a loan to W. T. French and taking from him and Mrs. French a deed to this property to secure such loan, and wishing to protect the plaintiff, which was a large creditor of the testator, notified the attorney, who was examining the title and preparing the deed to secure the intended loan, and while the attorney still had in his possession his report on the title and said deed, that the makers of this deed, who were the devisees of this land under the will and who were the executors, had assented to the devise giving them this property without paying the large debt which the plaintiff held against the testator. It is well settled that notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client, when such notice and knowledge come to the attorney in and about the subject-matter of his employment. *Brown* v. *Oattis, 55 Ga.* 416; *Deveney* v. *Burton, 110 Ga.* 56, 62 (35 S. E. 268) ; Civil Code (1910), § 3599; *Jones* v. *Lamon, 92 Ga.* 529 (2) (18 S. E. 423) ; 6 C. J. 638, § 144; *Lampkin* v. *First Nat. Bank, 96 Ga.* 487 (23 S. E. 390).

It is necessary that the knowledge of the attorney be gained in the course of the particular transaction in which he is employed by his client. 6 C. J. 639. In case of a limited employment, knowledge of the attorney beyond the scope of the employment is not imputable to the client. Hess v. Conway, 92 Kan. 787 (4 A. L. R. 1580, 1604, 142 Pac. 253). It has been held that, where a party employed an attorney for the special purpose of examining an abstract and passing upon the record title, the client was not chargeable with notice of all knowledge which the attorney may have previously acquired from other transactions for other parties. Trentor v. Pothen, 46 Minn. 298 (49 N. W. 129, 24 Am. St. R. 225). This is not this case. There was evidence which would have authorized a jury to find that the attorney who examined the title to this property and prepared the deed to secure the loan made by the claimant to the borrowers was the attorney for the claimant in this transaction. The vice-president and cashier of the claimant, who handled this transaction for his bank, testified that his bank would not have made this loan without an examination of the title having been made by an attorney selected by him. He further testified that the attorney so selected by him did make this examination, and that he relied upon his examination of the title. It is true that the borrower was to pay all expenses of securing the loan, including the fee of the attorney; but this fact alone would not make him the agent and attorney for the borrower and not for the lender. This case does not fall within that class of cases in which the attorney negotiates a loan as agent for the borrower, and in the inspection of property and examination of title acts solely as his agent. Merck v. American Freehold &c. Co., 79 Ga. 213 (7 S. E. 265).

So we are of the opinion that the court below erred in ruling out the above evidence offered by the plaintiff in fi. fa. to show that the claimant was not a bona fide purchaser for value and without notice of its rights. This error affected the further proceedings in the case, and rendered erroneous the direction of a verdict in behalf of the claimant.

5. The rulings made in the fifth and sixth headnotes do not require elaboration.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*