**In re Edward LINZER, Debtor.**

**No. 800–83712–288.**

United States Bankruptcy Court,
E.D. New York.

July 3, 2001.

the scales tipped considerably in favor of the    Hong Kong defendants.

J. Ted Donovan, Borges Donovan LLC, Syosset, NY, for Debtor.

Scott M. Zucker, Michael Shin and Jeanette Shin, Lake Success, NY, for Creditors.

## CORRECTED MEMORANDUM AND ORDER GRANTING CREDITORS' MOTION FOR LEAVE TO FILE A DISCHARGEABILITY COMPLAINT

STAN BERNSTEIN, Bankruptcy Judge.

### I. Issue

The issues of law that arose in this case under 11 U.S.C. § 523(a)(3)(B) are: (a) whether the mailing of a notice of the pendency of a chapter 7 filing to an unsecured creditor's *non-bankruptcy counsel* imputes notice to that creditor, and (b) whether that notice is *timely*, when mailed nine days before expiration of the deadline to file a(non)dischargeability [1] complaint?

---

1. The formal phrase of art under 11 U.S.C. section 523 is a "complaint for a determination of dischargeability." Since the plaintiff's objective is to be granted a declaratory judgment that her claim is excepted from the scope of the debtor's discharge, the more common reference in ordinary bankruptcy discourse is to a judgment of "nondischargeability".

Under the stipulated facts [2], the Court concludes that under the totality of the circumstances in this case, receipt by the creditor's non-bankruptcy counsel of notice of the pendency of the bankruptcy case (barely) imputed notice to the creditor, but nine days did not satisfy the statutory condition of timely notice.

## II. Factual and Procedural History

On June 9, 2000, the debtor filed a voluntary petition for chapter 7 relief. On June 11, 2000, the Clerk of the Court caused a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines" (Notice) to be mailed to all creditors listed by the debtor on his mailing matrix. The Notice stated that the "meeting of creditors" under 11 U.S.C. § 341 was scheduled for July 10, 2000, and that the deadline to file a complaint objecting to the debtor's discharge or to determine the nondischargeability of certain categories of debt was September 8, 2000 (deadline). Michael Shin and Jeanette Shin (the Shins) and several other unsecured creditors were omitted from the debtor's matrix of creditors and Schedule F (Unsecured Claims), and, therefore, the Shins did not receive the Notice.

On August 30, 2000, a scant nine days before the expiration of the deadline, the debtor filed what purported to be an Affirmation under Local Rule 1009–1(a) to amend the creditor's matrix and Schedule F to add creditors (1009–1(a) Affirmation).[3] Among the creditors added were the Shins "c/o NASD Dispute Resolution Inc, 125 Broad Street—36 Fl, New York, N.Y. 10004–2193" (NASD), who, as listed by the debtor, asserted a 2000–Arbitration Claim in the amount of $25 million. Bankruptcy counsel for the debtor failed to use the required LBR 1009–1(a) Affidavit and instead generated his own deficient form. To his form, he attached copies of Amended Schedules A, D, and F, an Amended Creditors' Matrix, and a Verification of Amended Creditors' Matrix, signed by the debtor on August 29, 2000, verifying that the list of creditors was true and correct to the best of his knowledge. Also attached was a Certificate of Mailing indicating that the "Affirmation of Prepetition Services" was served on August 29, 2000, on all creditors, including the Shins in care of NASD.[4]

On October 25, 2000, the Shins filed a motion for an order granting them leave to file a (late) nondischargeability complaint under 11 U.S.C. § 523(a)(2) and (4)[5]. This

**2.** The parties stipulated to all of the relevant facts, and submitted this contested matter for decision on the pleadings, affidavits, and memoranda of law.

**3.** Rule 1009 of the Federal Rules of Bankruptcy Procedure permits a debtor to amend his schedules before the case is closed. Rule 1009–1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (Local Rules) sets forth the procedures for effectuating an amendment. Local Rule 1009–1(b) provides that "a complete copy of the document, as amended, together with a copy of LBR 1009–1(a) affidavit, shall be served by the amending party upon: (i) the United States Trustee; (ii) the Case Trustee; (iii) all creditors who were added or deleted; and (iv) any other party affected

thereby. In the event the amendment affects claimed exemptions, the amending party must also serve all creditors. If the amendment adds a creditor, service on such creditor *shall include copies of all notices previously sent to creditors that appear in the Court's case file."* (Emphasis supplied).

**4.** The Court assumes that the Certificate of Service attached to the 1009–1(a) Affirmation contained a typographical error in its reference to "Affirmation of Prepetition Services."

**5.** The creditors' non-bankruptcy counsel made repeated errors in drafting the motion—he confused a complaint objecting to a discharge (of all unsecured debts) under 11 U.S.C. Section 727 and a complaint for a

motion was drafted by their non-bankruptcy counsel. In the proposed complaint, attached as an exhibit to the motion, the Shins alleged that they maintained a brokerage account at GFB Securities, Inc. (GFB) in which the debtor was a principal. The account was open from September 1998 to July 1999. It should have contained securities previously purchased by the Shins in the total amount of $3,227,024.25. The Shins allege that the debtor or GFB employees acting under his control prepared fraudulent statements listing the securities as held for their account, when, in fact, the securities were sold without the Shin's authorization by the debtor and the proceeds of sale converted to or for the benefit of the debtor's account. Before the debtor's bankruptcy filing, the Shins were actively pursuing an arbitration claim against the debtor with the NASD.

In support of their motion, the Shins argue that the debtor incorrectly listed their address as in care of NASD and that the debtor knew the Shins' home address. Not only was the debtor the Shins' securities broker, but he had also been their personal accountant and close personal friend for more then five years. The Shins allege that they did not directly receive actual notice of the bankruptcy filing, but do admit that on September 6, 2000, their NASD counsel, a non-bankruptcy attorney, received a courtesy copy of a letter dated August 30, 2000 (letter), from the debtor's bankruptcy counsel informing the NASD that the debtor had filed a chapter 7 petition ninety days earlier. Attached to

the letter was a copy of the 1009–1(a) Affirmation adding the Shins as creditors. Although the letter mentions the debtor's name, the date of the bankruptcy filing, and the chapter under which the case was filed, it did not make any reference to the deadline for filing nondischargeability complaints. Conspicuously absent was a copy of all notices previously sent to creditors as required under LBR 1009–1(b); that would have included a copy of the original Notice specifying the deadline. The Shins further allege that the only reason the letter was sent to NASD was to confirm, as specifically requested by NASD that the debtor had filed a bankruptcy petition for that would automatically stay the continuation of the Shins' arbitration proceeding against the debtor. The Shins denied directly receiving a copy of the letter; the debtor did not contest this until now.

During the oral argument, the Shins' counsel represented to the Court that the date of mailing of the letter was August 30, 2000, a Wednesday, just two business days before the start of the three-day Labor Day weekend. Customarily law offices close early on Friday afternoon, and many lawyers extend their holiday weekend through the following Tuesday. In this case the Shins' counsel did not return to his office until Wednesday, September 6, 2000. That gave him just two business days to come to the realization that he had a duty to review the court docket, discover the deadline, and hastily draft a complaint or move for an extension of the deadline. Even assuming that the letter was deliv-

---

determination of nondischargeability of his clients' claim under 11 U.S.C. Section 523. Although it may seem a haughty conceit on the part of a specialist court, an attorney admitted to practice by the federal court is held to the same standard of knowledge about bankruptcy law and procedure that applies to lawyers who regularly appear before the bankruptcy courts. The ethical duty under

EC 6–3 of the Code of Professional Responsibility is for a nonspecialist to associate himself or herself with experienced local bankruptcy counsel. Compliance with this ethical cannon has the dual advantage of more effectively representing the client's interest as well as reducing the probability of disciplinary proceedings or legal malpractice claims against the nonspecialist counsel.

ered to his office on Friday, September 1 on the eve of the three-day weekend, counsel would have only had four business days to take the necessary steps to protect his clients' claim. In rebuttal argument, the debtor's special bankruptcy counsel, who was retained for the limited purpose of this hearing, emphasized that under Fed. R. Bankr.R. 9006(a) the mailing of the letter fell under the eight day counting rule and that the intervening Saturday, Sunday, and Labor Day were properly counted as three of those eight days. He further argued that the Shins counsel's decision to close his office early on Friday and to take a four day weekend was legally irrelevant for computing the eight days of notice. This kind of argument promotes formalism at the cost of fairness and due process.

### III. Discussion

The creditors' proposed complaint arises under 11 U.S.C. § 523(a)(2) and (4). To implement § 523, Fed. R. Bankr.P. 4007(c) sets forth the time frame for filing a complaint under § 523(c) in a chapter 7 liquidation. Rule 4007(c) provides that:

"A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired."

Section 523(a)(3)(B) provides that a debt will be excepted from discharge if the debt is:

neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . .

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

In this case, all creditors originally listed by the debtor on the mailing matrix were notified that the deadline was September 8, 2000. On August 30, 2000, when the debtors' counsel filed his 1009-1(a) Affirmation and proof of service, the Clerk's Office, on its own initiative, extended the deadline to October 2, 2000, for added creditors only. A careful examination of the case file, including the debtor's 1009–1(a) Affirmation, shows as noted above, that the proported amendment to add creditors was procedurally defective and under LBR 1009(a) the amendment to add creditors was a nullity.[6] Therefore, the

---

6. The Eastern District of New York has developed its own form Affidavit pursuant to Local Rule 1009–1(a) which is available to the public at the intake counter at the Clerk's Office. The Affidavit includes the following language which incorporates the provisions of Local Rule 1009–1 and Federal Rule 4007(c): *"Reminder: No amendment of schedules is effective until proof of service in accordance with EDNY LBR 1009–1(b) has been filed with the*

*Court:* If this amendment is filed prior to the expiration of the time period set forth in Fed. R. Bankr.P. 4004 and 4007, it will be deemed to constitute a motion for a 30–day extension of the time within which any added creditors may file a complaint to object to the discharge of the debtor and/or to determine dischargeability. This motion will be deemed granted without a hearing if no objection is filed with the Court and served on debtor

docket entry by the Clerk's Office extending the deadline was itself a nullity. Both parties admitted that they did not reasonably rely on the purported extended deadline since neither party knew of the October 2, 2000 deadline until the hearing on the creditors' motion.[7] As such, the original September 8, 2000 deadline controls this Court's determination.

The Court must now determine whether receipt by the creditors' securities litigation counsel of a courtesy copy of the letter, sent by the debtor's counsel to NASD with a copy of the debtor's 1009–1(a) Affirmation, constitutes notice of the bankruptcy case to the creditors' authorized agent. Alternatively phrased, did receipt of this letter under the circumstances impute notice to the creditors?

The general rule in agency law is that adequate notice to or actual knowledge acquired by an agent is imputed to the principal. This rule also applies to the relation of attorney and client. 6A N.Y. Jur.2d Attorneys at Law § 101 (1997). Notice or knowledge is imputed when the agent is acting within the scope of his authority and the knowledge pertains to matters within the scope of the agent's authority. *Ford Motor Credit Company v. Weaver*, 680 F.2d 451 (6th Cir.1982) *citing Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956; *Anderson v. General American Life Insurance Co.*, 141 F.2d 898 (6th Cir.), *cert. denied*, 323 U.S. 798, 65 S.Ct. 554, 89 L.Ed. 637 (1945). This general rule for imputing an agent's notice or knowledge applies to bankruptcy cases. *Ford, supra.* Knowledge by an agent of a creditor of the pendency of a bankruptcy case will be imputed to the creditor if his agent was employed to collect the debt or was in charge of its collection. *Park Yorkville Corp. v. Mendley*, 73 N.Y.S.2d 856 (City Ct., N.Y. Co.1947) *citing Keefauver v. Hevenor*, 163 A.D. 531, 148 N.Y.S. 434 (N.Y.App. Div. 1st Dept.1914); *Honig v. Minotti*, 270 A.D. 947, 62 N.Y.S.2d 261 (1946) (attorney who had been employed to collect judgment and who had instituted a third party proceeding received due notice of the bankruptcy and notice to non-bankruptcy attorney was notice to creditor).

In *Pure in Heart Baptist Church v. Fulton*, 3 B.R. 600, 603 (Bankr.E.D.Mich. 1980) *rev'd on other grounds, In re Fulton*, 1980 WL 95629 (E.D.Mich. Nov. 14, 1980), the court was faced with the issue whether a law firm that represented an unscheduled creditor in a state court action was authorized to receive notice of a bankruptcy case on behalf of the creditor. The *Fulton* court found that knowledge of the bankruptcy case acquired by the law firm

---

within 10 days following filing of proof of service of this affidavit, all attachments and the amended schedules in accordance with EDNY LBR1009–1." Conspicuously absent from the debtor's 1009–1(a) Affirmation was the provision contained in the form Affidavit with respect to the motion for a 30-day extension. By virtue of the blatant omissions from the debtor's 1009–1(a) Affirmation, namely the predicate language contained in the form Affidavit pursuant to Local Rule 1009–1(a), that the amendment would be deemed to constitute a motion for a 30-day extension of time, an extension was never triggered and therefore the Clerk's Office erroneously updated the docket entry to extend the deadline to October 2, 2000. The deficiencies in the 1009–1(a) Affirmation are apparent. It was not mailed to the Shins' last known mailing address as required by Local Rule 1007–2(a)(i), nor did the Affirmation contain copies of all prior notices as required by Local Rule 1009–1(b). Because the Shins were never properly served, they could not have possibly objected within 10 days of the filing of the proof of service which itself was not made in accordance with Local Rule 1009–1(b) as specifically required in the form Affidavit.

7. Transcript of Hearing, docket # 25, p. 5, ¶: 15—16; p. 114, ¶: 23 to p. 115, ¶: 18.

must be imputed to the creditor even though the attorney was not expressly retained to represent the client in that case. The court held that when counsel acquires knowledge of a bankruptcy case, that attorney is obligated to determine what action to take in order to protect the client's interests.[8]

Based upon the weight of these precedents the Court is compelled to hold that the creditors non-bankruptcy counsel is deemed to be an authorized agent for receiving notice of the debtor's pending bankruptcy case. The implicit assumption is that when a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal, including an NASD arbitration proceeding, that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency. The second implicit assumption is that an attorney licensed to practice law generally is deemed to have sufficient training to discover the appropriate law and rules governing bankruptcy cases. These assumptions do violence to the proliferation of lawyers who find it increasingly necessary to limit their practice to a specialty niche. In this respect the normative concept of the duties of a generalist is severely at odds with the specialized practices of today. This Court can not, however, ignore the well-settled law even if on close analysis it departs so markedly from reality.

What is troublesome under the circumstances of this case is that notice of the bankruptcy case was communicated to the creditors' non-bankruptcy counsel in such an oblique and mischievous manner. First of all, the attachments to the letter were, as noted above, ineffective to add the Shins as creditors. It is only because the specific court and case number were contained in these defective attachments that the notice requirement under Section 523(a)(3)(B) could be deemed to have been satisfied by a bare minimum. The only way to reconcile this seemingly strained construction of this section is to recognize that if the debtor's counsel had instead faxed a copy of the debtor's bankruptcy petition, and nothing else, that would have constituted notice of the pending case under the prevailing precedents. Much of the case law on this subject, of course, is drawn by analogy from 11 U.S.C. section 362(h). That section provides for sanctions whenever a creditor violates the automatic stay. We have regrettably become inured to the routine practice of a debtor's faxing a copy of his petition to a foreclosing mortgagee a half an hour before a scheduled foreclosure sale is to be held on the state courthouse steps. See 3 Collier on Bankruptcy Para. 362.11 (15th rev. ed.1999) (collecting and commenting on the cases). This Court is thus satisfied that notice to the creditors' non-bankruptcy counsel is notice to the Shins.[9]

8. Here, creditors' counsel could have searched the bankruptcy court docket to track the status of the pending bankruptcy case and/or conferred with experienced bankruptcy counsel. *See generally, In re Grillo*, 212 B.R. 744 (Bankr.E.D.N.Y.1997) (creditor who received actual notice of pending bankruptcy case had a duty to review the docket entries and then to file the appropriate complaint.)

9. The Second Circuit in *In re Massa*, 187 F.3d 292 (2nd Cir.1999) held that a creditors' attorney had neither notice nor actual knowledge of the chapter 7 case when he was informed in three separate letters that the debtor had filed for bankruptcy relief, but where creditors were unscheduled and were not advised of a subsequent conversion to chapter 7. The *Massa* court was disturbed that none of the three letters sent to creditors' counsel referred to the chapter 7 case that had resulted in a discharge order.

■ The next issue is whether the notice by means of the letter was timely. In reaching this issue, the court must look to the totality of the circumstances. *In re Massa*, 187 F.3d 292 (2nd Cir.1999) *citing In re Dinova*, 212 B.R. 437, 443 (2d Cir. BAP 1997). This approach assumes that the deadline set by Rule 4007(c) is not jurisdictional but is subject to equitable exceptions. The Second Circuit rejected the concept that the time period imposed by Rule 4007(c) is jurisdictional. Rather, it found that Rule 4007(c) merely establishes a statutory filing deadline and is therefore subject to the defenses of waiver, estoppel, and equitable tolling. *In re Benedict*, 90 F.3d 50 (2d Cir.1996); *See also, In re Malandra*, 206 B.R. 667 (Bankr.E.D.N.Y.1997).

■ Moreover, even if the creditor has actual notice or knowledge of the case, this may be insufficient if the knowledge was obtained or the notice was given too late. Actual knowledge of the case for purposes of the discharge exception is knowledge received *in time* to allow a creditor to file a timely claim and to file a timely complaint to determine the dischargeability of the debt if it falls within the ambit of § 523(a)(2), (a)(4), (a)(6) or possibly (a)(15). 3 Collier on Bankruptcy, Para. 523.09[4][b], p. 523–69 (15th rev. ed.1999) (emphasis supplied).

The Court holds that under the circumstances of this case notice of a pending bankruptcy case nine days before the expiration of the deadline to file nondischargeability complaints is inadequate. *See, In re Dewalt*, 961 F.2d 848 (9th Cir.1992) (Notice to counsel for unscheduled creditor seven days before bar date for dischargeability complaint was insufficient. 30–day notice provision of Rule 4007(c) provides a guide to the minimum time within which it is reasonable to expect a creditor to act at penalty of default.); *In re Wilborn*, 205

B.R. 202 (9th Cir. BAP 1996) (The court relied on its § 105 general equitable powers to extend deadline to file nondischargeability complaint 5 months after the bar date when notice of the filing was received after the bar date had passed); *In re Santiago*, 175 B.R. 48 (9th Cir. BAP 1994); *In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal. 1995); *In re Burrier*, 184 B.R. 32 (Bankr. N.D.Ohio 1995) (creditor must have either formal or inquiry notice of the bar date for filing dischargeability complaints at least 30 days prior to the deadline in order to be bound thereby. When a creditor receives actual notice of a bankruptcy, more than 30 days in advance of the bar date, but not formal notice of the bar date, the creditor has an obligation to inquire as to that date to protect their interest); *In re Shaheen*, 174 B.R. 424 (E.D.Va.1994) (30 day notice requirement protects a creditor's right to participate in the bankruptcy process. Debtor should not be allowed to benefit from omitting creditors from his initial petition); *In re Heiney*, 194 B.R. 898 (D.Colo.1996) (18 days notice of bankruptcy bar date was inadequate given Rule 4007(c) 30 day notice requirement.)

■ Had the Shins originally been scheduled, they would have had, under Rule 4007(c), sixty (60) days from the initially scheduled date of the § 341 meeting to file a nondischargeability complaint. Instead, the Shins did not directly receive actual notice of the bankruptcy case. It was only because their non-bankruptcy counsel received a courtesy copy of a letter sent to the NASD that notice is imputed to the Shins. Even more disturbing is the perceived abuse of process given that the debtor knew or should have known the Shin's address and he purposefully omitted the Shins from the schedules. As a fundamental matter of due process lists or schedules of creditors serve no useful purpose unless they include the addresses last

known to the debtor to which notices may be sent. 3 Collier on Bankruptcy, ¶ 523.13, p. 523–79 (15th Ed., rev.1999).

In *In re O'Shaugnessy*, 252 B.R. 722 (Bankr.N.D.Ill.2000), the court stated that the purpose of requiring a debtor to list creditors with their proper mailing address is to afford those creditors basic due process notice.

"The Court must look at the totality of the circumstances in determining whether notice was reasonable. *Illinois ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir.1989). What constitutes "reasonable notice," however, varies according to the knowledge of the parties. See *In re S.N.A. Nut Co.*, 198 B.R. 541, 543 (Bankr.N.D.Ill.1996). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *In re Walker*, 149 B.R. 511, 514 (Bankr.N.D.Ill.1992). Another circumstance to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights."

*In re O'Shaugnessy*, at 730.

As succinctly stated by the court in *In re Walker*, 149 B.R. 511 (Bankr.N.D.Ill. 1992),

"the creditor would be greatly prejudiced and would be divested of its rights if not allowed an extension of time Any prejudice to Debtor in allowing the creditor an extension of time would arise from Debtor's own failure to list the creditor. The Bankruptcy Code and Rules cannot be read to countenance a debtor's disregard of duty to schedule all creditors, and thereby give that debtor a basis to object to untimely filing under Rule 4007 after depriving selected creditors of notice."

*In re Walker*, at 517.

This Court will not allow a debtor who does not comply with the Federal Bankruptcy Rules and the Local Rules by failing to provide creditors with adequate and timely notice to "sandbag" creditors in this egregious manner by sending their non-bankruptcy counsel notice of the case only nine days before the expiration of the deadline for filing nondischargeability complaints.

## IV. Conclusion

For the foregoing reasons, the creditors' motion for an order authorizing them to file a complaint objecting to discharge under 11 U.S.C. § 523(a)(2) and (4) is granted. Upon paying the filing fee for this adversary proceeding within 10 days of entry of this order the attached complaint will be deemed filed and the Clerk will issue the appropriate summons. The oral motion of the Shins to vacate the automatic stay with respect to the NASD 2000–Arbitration # 00–02503 between the debtor and the Shins is granted and the stay is vacated to allow the parties to proceed with the NASD arbitration. The NASD arbitrators can make specific findings of fact with respect to the underlying substantive claims of fraud. Then the Shins if they prevail on the merits of their arbitration proceeding can return to this court for a hearing on their request for the equitable relief of nondischargeability which falls with in this courts exclusive jurisdiction.

The creditors counsel is directed to settle an order consistent with this opinion.