In re Michael Charles SCHICKE, Debtor.

Chanute Production Credit Association, Appellant,

v.

Michael Charles Schicke, Appellee.

BAP No. KS–01–089.
Bankruptcy No. 96–10945.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 17, 2003.

■■■■■■■■■■■■■■■■■■■■

Eric D. Bruce (Petra H. Johnson with him on the brief), of Bruce, Bruce & Lehman, L.L.C., Wichita, KS, for Appellant.

Philip J. Bernhart, Coffeyville, KS, for Appellee Michael Charles Schicke.

Before CLARK, CORNISH, and CORDOVA, Bankruptcy Judges.[1]

---

1. The Honorable Donald E. Cordova, Chief Bankruptcy Judge for the United States Bankruptcy Court for the District of Colorado heard oral argument in this appeal on September 12, 2002. On February 16, 2003, prior to the issuance of this Opinion, Judge Cordova passed away. He had, however, fully considered this matter and authored the

## OPINION [2]

CLARK, Bankruptcy Judge.

Chanute Production Credit Association ("CPCA") appeals an Order of the United States Bankruptcy Court for the District of Kansas denying its Motion to Reopen the debtor's closed Chapter 7 case.[3] CPCA sought to reopen the case to file a complaint against the debtor under 11 U.S.C. § 523(a)(2), (4) or (6).[4] Although the time to file such complaints established under § 523(c) and Fed. R. Bankr.P. 4007(c) has lapsed, CPCA argues that it should be granted additional time under § 523(a)(3)(B) to file a complaint because it had neither notice nor actual knowledge of the debtor's Chapter 7 case. For the reasons stated below, we conclude that CPCA had timely notice of the debtor's case through its agent-attorney and, therefore, § 523(a)(3)(B) does not afford CPCA additional time to file a § 523(a)(2), (4) or (6) complaint against the debtor. As such, the debtor's debt to CPCA has been discharged and reopening the debtor's closed case would afford CPCA no relief. The bankruptcy court, therefore, did not abuse its discretion in denying CPCA's Motion to Reopen and its Order must be AFFIRMED.

## I. *Background*

In 1981, CPCA commenced an action against the debtor in Kansas State Court, alleging that the debtor had obtained loans from it based on fraudulent representations and actual fraud ("Fraud Action"). A judgement was entered in the Fraud Action against the debtor in 1984, awarding CPCA approximately $583,000 ("Judgment"). The State Court expressly found that the debtor had induced CPCA to make loans to him by providing it with false financial statements and other misrepresentations concerning his financial condition.

From 1984 to 1989, CPCA was represented in the Fraud Action by William D. Coombs, an attorney practicing law in Chanute, Kansas. After Mr. Coombs was diagnosed with cancer, CPCA retained attorney Frank C. Beyerl, and Mr. Beyerl filed a Notice of Appearance in the Fraud Action in March 1989. Despite Mr. Beyerl's 1989 Notice of Appearance, Mr. Coombs made an appearance in the Fraud Action as late as October 1991, when he filed a Request for Execution on behalf of the CPCA. Mr. Coombs' 1991 appearance was the last action of record made by the CPCA in the Fraud Action prior to the filing of the debtor's Chapter 7 case.[5]

---

attached Dissenting Opinion prior to his death.

**2.** This caption, created by the Court, originally listed the Chapter 7 trustee, D. Michael Case, and the United States trustee as Appellees because they were listed in the Notice of Appeal as parties to the Order being reviewed herein. The Court hereby amends the caption to delete them as Appellees. While they will be served with this Opinion, they in no way made an appearance in the bankruptcy court or in this appeal and, therefore, were improperly listed as Appellees.

**3.** Also before the Court is CPCA's "Motion to Accept Supplemental Appendix," seeking to

supplement CPCA's Appendix to include its Notice of Appeal. The unopposed Motion is GRANTED.

**4.** Unless otherwise stated, all statutory references are to title 11 of the United States Code.

**5.** On November 18, 1995, CPCA employed S. Kent Pringle to represent it in the Fraud Action due to Mr. Beyerl's suspension from the practice of law. Exhibit 6, *in* Appellant's Appendix at 158. However, Mr. Pringle did not file a Notice of Appearance or take any action in the Fraud Action at that time nor any time prior to the filing of the debtor's Chapter 7 case—the only time period relevant to this case.

In March 1996, the debtor filed a petition seeking relief under Chapter 7 of the Bankruptcy Code. His petition was accompanied by a Schedule of Liabilities. In Schedule F, the debtor listed CPCA as a creditor holding an unsecured nonpriority claim in the amount of the Judgment. CPCA appears in Schedule F as follows:

Chanute Production Credit Assn.
c/o Coombs & Hull
P.O. Box 306
Chanute, Kansas 66720 [6]

The debtor scheduled CPCA based on the name listed in the Judgment. Unknown to the debtor, however, was the fact that CPCA had changed its name at least twice prior to March 1996. CPCA had not had any contact with the debtor since 1984 that would have informed him of any of its new names.

The debtor did not list CPCA's 1996 address in Schedule F. Rather, he scheduled CPCA in care of Coombs & Hull at a P.O. Box belonging to Mr. Coombs, the last attorney to have made an appearance on behalf of CPCA in the Fraud Action. While we have no record regarding the debtor's reasons for using Mr. Coombs's address, the record we do have demonstrates the following.[7]

Neither the Judgment nor any papers filed in the Fraud Action disclose CPCA's address. Rather, they merely indicate CPCA's attorney of record. Mr. Coombs, who at the time of the 1984 Judgment and 1991 Renewal Affidavit was signing papers as a member of the law firm of "Coombs & Pringle," was the last attorney to make an appearance on behalf of CPCA in the Fraud Action as of March 1996. Although

the record does not indicate when Mr. Coombs formed or joined the law firm of Coombs & Hull, in 1996 he was undisputably affiliated with Coombs & Hull. The P.O. Box listed under Coombs & Hull in Schedule F is a P.O. Box that belonged to Mr. Coombs in 1996.[8] Mr. Coombs, although ill and not working full-time in 1996, was a practicing attorney in good standing in Kansas at that time.

No one contests that the bankruptcy court mailed a Notice of Commencement of Case in April 1996 ("Bankruptcy Notice") to CPCA at Mr. Coombs's address stated by the debtor in his Schedule F, disclosing that the deadline to object to the debtor's discharge or the dischargeability of specific debts expired on July 1, 1996 ("Discharge Objection Deadline"). There was no evidence presented that the Bankruptcy Notice was returned to the bankruptcy court for improper service. Neither the Bankruptcy Notice nor notice of its contents were relayed directly to the CPCA prior to the expiration of the Discharge Objection Deadline. CPCA did not file a timely complaint against the debtor seeking to except its Judgment from discharge under § 523(a)(2), (4) or (6).

On November 25, 1996, the bankruptcy court entered its "Discharge of Debtor and Final Decree," discharging the debtor's prepetition debts, including the Judgment, and closing his Chapter 7 case ("Discharge Order"). The Discharge Order was mailed by the bankruptcy court to CPCA at Mr. Coombs's address listed in the debtor's Schedule F. Unlike the Bankruptcy Notice, the Discharge Order was delivered to

---

**6.** Appellant's Appendix at 58.

**7.** The debtor's bankruptcy counsel's statements both before the bankruptcy court and this Court regarding the methodology used to list CPCA's address are not evidence. Thus, we rely solely on what can be gleaned from

the debtor's testimony and the documents admitted into evidence by stipulation.

**8.** Appellant's Appendix at 157 and 177. There was no evidence presented as to Coombs & Hull's address.

CPCA sometime in November or December of 1996 as part of a package from Coombs & Hull containing title work done by Mike Hull, a Coombs & Hull attorney who was retained by CPCA on an on-going basis on matters unrelated to the Fraud Action. Thus, CPCA had knowledge and notice of the debtor's Chapter 7 case in November or December 1996, after its Judgment had been discharged.

Just prior to CPCA learning of the debtor's Chapter 7 case, in September 1996, it filed a "Renewal Affidavit" in the Fraud Action. It also commenced an action in the State Court against the debtor to execute its Judgment. When the State Court became aware of the debtor's case, however, it abstained from considering this action, refusing to exercise concurrent jurisdiction with the bankruptcy court to determine the dischargeability of CPCA's Judgment. CPCA appealed the State Court's abstention order, but the Kansas Court of Appeals affirmed the State Court.

In September 2000, shortly after the State Court's abstention order was affirmed on appeal and nearly four years after it admits that it knew of the debtor's Chapter 7 case, CPCA filed its Motion to Reopen in the bankruptcy court. CPCA sought to reopen the debtor's case to determine the dischargeability of its Judgment under § 523(a)(2), (4) or (6). It argued that the Discharge Objection Deadline did not apply to the Judgment under § 523(a)(3)(B) because it did not have timely notice or actual knowledge of the debtor's Chapter 7 case. The debtor objected to CPCA's Motion to Reopen and moved for summary judgment. The bankruptcy court denied the debtor's summary judgment motion, holding that a genuine issue of material fact existed as

to whether CPCA had actual knowledge or notice of the debtor's case to allow for an extension of the Discharge Objection Deadline under § 523(a)(3)(B).

After a trial, the bankruptcy court entered an order denying CPCA's Motion to Reopen ("Reopen Order"). There was no "cause" under § 350(b) to reopen the debtor's Chapter 7 case because the Judgment had been discharged and any § 523(a) action against the debtor was time-barred. The time to file a § 523(a) complaint could not be extended under § 523(a)(3)(B) because CPCA, through its attorney of record, had knowledge or notice of the debtor's Chapter 7 case prior to the expiration of the Discharge Objection Deadline.

CPCA timely appealed the Reopen Order to this Court and, given the consent of the parties, this Court has appellate jurisdiction to review the final Order. 28 U.S.C. § 158(a)(1) & (c); Fed. R. Bankr.P. 8002(a).

## II. *Discussion*

■■■ CPCA argues that the bankruptcy court erred in refusing to reopen the debtor's Chapter 7 case under § 350(b) for "cause"[9] because it may file a § 523(a)(2), (4) or (6) complaint against the debtor to determine the dischargeability of its Judgment. An order under § 350(b) related to the reopening of a closed case is reviewed for abuse of discretion.[10] A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case.

■■■ The bankruptcy court did not abuse its discretion in refusing to reopen the debtor's closed Chapter 7 case because it could not afford CPCA any relief if the

---

9. 11 U.S.C. § 350(b).

10. *In re Parker,* 264 B.R. 685, 690 (10th Cir. BAP 2001).

case were reopened. CPCA's Judgment was discharged by the Discharge Order, and CPCA admits that it did not file a § 523(a)(2), (4) or (6) complaint against the debtor seeking to except the Judgment from discharge prior to the expiration of the Discharge Objection Deadline.[11] As discussed below, although § 523(a)(3)(B) could extend the Discharge Objection Deadline, it does not apply in this case because CPCA had formal notice of the debtor's Chapter 7 case through Mr. Coombs, its attorney-agent, prior to the expiration of that Deadline.

1. *Section 523(a)(3)(B).*

■ Section 523(a)(3)(B) states:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

...

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

...

(B) if such debt is a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.] [12]

Creditors who prove the applicability of this section are not entitled to an automatic exception of their claims from a debtor's discharge under § 523(a)(2), (4) or (6). Rather, § 523(a)(3)(B) simply permits the filing of a § 523(a)(2), (4) or (6) complaint after the lapse of any time limitation made applicable under § 523(c) and Fed. R. Bankr.P. 4007(c).[13]

■ Extension of the time to object to the dischargeability of a debt under § 523(a)(3)(B) enforces the performance of the debtor's duties under § 521(1) which, in turn, insures creditors receive notice of a case and, thus, due process. In particular, § 521(1) requires debtors to file a Schedule of Liabilities.[14] It is from this Schedule that the clerk of the bankruptcy court derives the names and addresses of creditors to whom a Notice of Commencement of Case, which includes the deadline to file § 523(a) complaints, is mailed as required under § 342(a) [15] and Fed. R.

---

11. The Discharge Objection Deadline was established based on § 523(c) and Fed. R. Bankr.P. 4007(c). Section 523(c) requires that a complaint be filed to determine the dischargeability of a debt under § 523(a)(2), (4), (6) and (15), and Fed. R. Bankr.P. 4007(c) states that such a complaint must be filed no later than 60 days after the first date set for the § 341 meeting of creditors. This 60–day deadline may not be enlarged, unless an extension is requested prior to its expiration or § 523(a)(3)(B) applies. Fed. R. Bankr.P. 4007(c) & 9006(b)(3). CPCA did not file a complaint prior to the expiration of the Discharge Objection Deadline, and it did not timely seek an extension of that Deadline under Rules 4007(c) and 9006(b)(3). Thus, it must obtain an extension under § 523(a)(3)(B).

12. 11 U.S.C. § 523(a)(3)(B).

13. *See* n. 11 *supra.*

14. Section 521(1) also requires the debtor to file a List of Creditors. Under Fed. R. Bankr.P. 1007(a), however, the debtor need not file a List of Creditors if its petition is accompanied by a Schedule of Liabilities. The docket sheet in this case indicates that the debtor filed his petition along with all Schedules, and the parties have relied on the debtor's Schedule F. Thus, we are not concerned with a List of Creditors herein.

15. This section states: "There shall be given such notice as is appropriate ... of an order for relief in a case under this title." 11 U.S.C. § 342(a).

Bankr.P.2002(f)(1) and (5).[16] The Notice of Commencement of Case served based on the information provided by the debtor under § 521(1) affords creditors due process—*i.e.*, "notice reasonably calculated . . . to apprise" creditors "of the pendency of the [debtor's case] and afford them an opportunity to present . . . objections" to the discharge of a debt under § 523(a)(2), (4) or (6).[17] When a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr.P. 4007(c).

▮ The debtor's duty to afford due process is counterbalanced by the creditors' duty to object to the discharge of a debt if it has *any* notice *or* knowledge or a Chapter 7 case prior to the expiration of the time limitation set forth in Fed. R. Bankr.P. 4007(c). It is well-established in the Tenth Circuit that upon the receipt of notice or knowledge of a Chapter 7 case, creditors must affirmatively protect their rights by informing themselves of applicable deadlines and timely filing complaints to except their claims against the debtor from discharge.[18] The informed creditor's duty to act timely insures the finality of the discharge granted to the honest and responsible debtor—when the deadline to file dischargeability complaints established under Fed. R. Bankr.P. 4007(c) has lapsed, the debtor is assured that creditors cannot attack the discharge of their individual debts.

---

**16.** Rule 2002 provides, in relevant part, that:

> (f) *Other Notices.* . . . the clerk . . . shall give the debtor, all creditors, and indenture trustees notice by mail of: (1) the order for relief; . . . (5) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007. . . .
>
> (g) *Addressing Notices.*
> (1) Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. . . .
> (2) If a creditor or indenture trustee has not filed a request designating a mailing address . . ., the notices shall be mailed to the address shown on the . . . schedule of liabilities. . . .

Fed. R. Bankr.P.2002(f)(1) and (5), (g)(2).

**17.** *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see In re Walker,* 927 F.2d 1138, 1144 (10th Cir.1991) (a claim will not be discharged "if the debtor fails to properly schedule the claim and the creditor does not receive notice of the debtor's bankruptcy and the relevant filing dates."); *Bonner v. Adams (In re Adams),* 734 F.2d 1094, 1098 (5th Cir. 1984) ("It is well settled that if a debtor lists incorrectly the name or address of a creditor in the required schedules, so as to cause the creditor not to receive notice, that creditor's debt has not been 'duly scheduled' . . . and if the creditor has no actual knowledge of the bankruptcy proceeding, the creditor's debt is not dischargeable."), *quoted in In re Compton,* 891 F.2d 1180, 1184 (5th Cir.1990); *see generally Reliable Elec. Co. v. Olson Constr. Co.,* 726 F.2d 620 (10th Cir.1984) (discussing application of due process in bankruptcy).

**18.** *Walker,* 927 F.2d at 1145; *Yukon Self Storage Fund v. Green (In re Green),* 876 F.2d 854, 856 (10th Cir.1989). These cases expressly distinguish notice required in Chapter 7 cases from notice required in Chapter 11 cases. In *Reliable Electric,* 726 F.2d at 622, the Tenth Circuit held that a creditor in a Chapter 11 case can expect to receive formal notice of important events, and that a debtor's failure to provide such notice may result in the creditor's claim being excepted from discharge. In *Walker* and *Green,* the Tenth Circuit limited its ruling in *Reliable Electric* to Chapter 11 cases. It held in both cases that creditors with informal knowledge of a Chapter 7 case have a duty to learn about deadlines affecting the dischargeability of their claims, and that § 523(a)(3)(B) does not extend applicable deadlines despite lack of formal notice. CPCA's extensive reliance on *Reliable Electric,* therefore, is unpersuasive.

■ Section 523(a)(3)(B) thus makes three points clear: (1) a debtor who seeks the benefit of a discharge has a duty to notify creditors affected by the discharge of his or her case to allow them an opportunity to object thereto; (2) creditors with formal notice of a case have a duty to timely protect their rights against a debtor; but (3) even if the debtor does not provide creditors with formal notice of his or her case, the debtor nevertheless will receive a discharge if a creditor actually knows of the case and fails to timely protect its rights.

This case involves the debtor's duty to properly schedule CPCA in his Chapter 7 case to provide CPCA formal notice, not whether CPCA had actual knowledge of the case.[19] All parties agree that the debtor's Schedule of Liabilities, Schedule F, listed CPCA, and that the Bankruptcy Notice was timely mailed by the bankruptcy court clerk to CPCA at the address listed by the debtor in his Schedule F as required by § 342(a) and Fed. R. Bankr.P. 2002(f)(1) and (5) and (g)(2). The point of contention is whether the debtor properly listed CPCA in care of its attorney, or whether he was required to schedule CPCA at its own address.

■ A review of the law discussed below and the facts of this case lead us to the conclusion that the debtor properly scheduled CPCA in care of its attorney, because the attorney listed was its agent in matters related to the Fraud Action and the Judgment subject to discharge in the Chapter 7 case. The attorney-agent's receipt of formal notice prior to the expiration of the Discharge Objection Deadline [20] is imputed to CPCA and, thus, precludes the application of § 523(a)(3)(B) because CPCA did not timely protect its rights under § 523(a). The debtor had a right to rely on the discharge of the Judgment when the Discharge Order was entered inasmuch as he adequately performed his duty of timely notifying CPCA of his case. Because CPCA cannot seek to except its Judgment from discharge, reopening the debtor's Chapter 7 case would serve no purpose.

2. *A debtor may schedule a creditor in care of its attorney for the purpose of providing notice under § 523(a)(3)(B), provided that the attorney is the creditor's agent in matters related to the Chapter 7 case.*

■ We must determine whether the debtor properly scheduled CPCA in care of its attorney, the party who is presumed to have received formal notice of the Chapter 7 case prior to the expiration of the Discharge Objection Deadline, or whether the debtor was required to schedule CPCA at its address. If CPCA's own address was required, service of the Bankruptcy Notice on the address listed in the debtor's Schedule F would not constitute

---

**19.** It is undisputed that CPCA did not know about the case prior to the expiration of the Discharge Objection Deadline, and no evidence was presented in the bankruptcy court as to whether an agent of CPCA actually knew about the case prior to that time.

**20.** Papers sent by United States mail are presumed received by the addressee, absent evidence to the contrary. *See, e.g., Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884); *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir.1995); *In re Bucknum,* 951 F.2d 204, 206–07 (9th Cir.1991); *Denmon v. Runyon,* 208 B.R. 225 (D.Kan. 1997); *In re Grand Union Co.,* 204 B.R. 864 (Bankr.D.Del.1997). Here, it is undisputed that the bankruptcy court clerk sent the Bankruptcy Notice to CPCA to the address listed in the debtor's Schedule F. Thus, it must be presumed that the Bankruptcy Notice was received by the addressee. This presumption was in no way rebutted by CPCA.

"notice" to CPCA under § 523(a)(B)(3). On the other hand, if CPCA could be scheduled in care of its attorney, as done by the debtor herein, service of the Bankruptcy Notice on the attorney could be "notice" to CPCA under § 523(a)(3)(B).

The Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure provide little guidance as to the address that a debtor must use to properly schedule a creditor. But, under agency law, § 342(a) and due process, and established Tenth Circuit law, it may be appropriate for the debtor to schedule the creditor in care of its attorney provided the attorney is the creditor's agent in matters related to the debtor. If the attorney is the creditor's agent, agency law permits notice received by the attorney-agent to be imputed to the creditor. Such imputed notice may, depending on the facts of the case, be "notice" under § 523(a)(3)(B).

Federal Rule of Bankruptcy Procedure 1007(b) is the only authority governing how a debtor must list creditors in its Schedule of Liabilities. It states that the debtor's Schedule of Liabilities must be "prepared as prescribed by the appropriate Official Forms."[21] Official Form 6 contains all of the Schedules that a debtor must file, including the Schedule of Liabilities. Schedule F is part of the Schedule of Liabilities, and it instructs the debtor to list its general unsecured creditors by name and mailing address. Rule 1007(b) and Official Form 6 do not mention a creditor's attorney or agent. Thus, it is arguable that debtors must list a creditor at its address, not the address of its attorney or agent.[22] But, such a narrow reading of Rule 1007 and Official Form 6 does not appear to be warranted under well-established agency law.

An attorney may an be agent of his or her client,[23] and notice to an agent-attorney can be imputed to the principal-client.[24] It has thus been held that debtors may list a creditor in care of its attorney in their Schedule of Liabilities, provided that the attorney is the creditor's agent in the context of the bankruptcy case, and notice to the attorney-agent will be "notice" under § 523(a)(3)(B).[25] While an at-

**21.** Fed. R. Bankr.P. 1007(b)(1).

**22.** *See, e.g., Carpet Servs., Inc. v. Hutchison (In re Hutchison),* 187 B.R. 533, 535–36 (Bankr.S.D.Tex.1995) (relying on Rule 1007(a)(1), debtor may not schedule creditor care of its attorney) (citing cases).

**23.** *See, e.g., Hess v. Conway,* 92 Kan. 787, 142 P. 253, 255 ("*Hess I*"), *reh'g denied,* 93 Kan. 246, 144 P. 205 (1914) ("*Hess II*"), *aff'd,* 241 U.S. 624, 36 S.Ct. 681, 60 L.Ed. 1211 (1916); *see also In re Land,* 215 B.R. 398, 404 (8th Cir. BAP 1997); *In re Linzer,* 264 B.R. 243, 248–49 (Bankr.E.D.N.Y.2001); *Pure in Heart Baptist Church v. Fulton,* 3 B.R. 600, 603 (Bankr.E.D.Mich.1980), *rev'd on other grounds,* Civ. A. No. 80–72788, 1980 WL 95629 (E.D.Mich. Nov.14, 1980).

**24.** *Hess II,* 144 P. at 208 ("The law ... imputes the knowledge of the attorney to the client precisely as it imputes the knowledge of the agent ... to his principal."); *Hess I,* 142 P. at 255 ("Notice to an agent or attorney is notice to his principal or client in regard to the matter in which he is engaged. ... Notice to the attorney which will bind the client must be notice in the particular transaction in which the client has employed him." (internal quotations omitted)); *see generally City of Arkansas City v. Anderson,* 243 Kan. 627, 762 P.2d 183, 189 (1988) (agency law imputes knowledge of agent to principal); *accord Rosenbaum v. Texas Energies, Inc.,* 241 Kan. 295, 736 P.2d 888 (1987); *Supreme Petroleum, Inc. v. Briggs,* 199 Kan. 669, 433 P.2d 373 (1967); *Mackey v. Bd. of County Comm'rs,* 185 Kan. 139, 341 P.2d 1050 (1959).

**25.** *See, e.g., Maldonado v. Ramirez,* 757 F.2d 48, 51 (3rd Cir.1985); *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 457 (6th Cir.1982) (citing cases); *Slaiby v. Rassman (In re Slaiby),* 57 B.R. 770, 773 (D.N.H.1985) (citing cases); *Linzer,* 264 B.R. at 248–49; *Western Bank v. Silver (In re Silver),* 107 B.R. 328, 329

torney need not have been retained to represent a creditor in a bankruptcy case or be a bankruptcy attorney, it is important that there be some nexus between the creditor's retention of the attorney and the creditor's issues with the debtor. It is generally held that an attorney who represents the creditor in matters against a debtor prepetition, such as in obtaining or collecting a judgment that will be affected by discharge, will be an agent of the creditor in the context of a debtor's bankruptcy case.[26]

Scheduling a creditor in care of an agent-attorney may not, depending on the facts of the case, be offensive under § 342(a) or due process. Neither require the "best" notice. Section 342(a) only requires notice that is "appropriate," and due process mandates notice "reasonably calculated" to apprise creditors of a case.[27] Notice sent to an agent-attorney in certain circumstances, therefore, may be appropriate and reasonably calculated to inform the client-creditor of the case. Indeed, given an agent's duties to its principal and an attorney's duties to its client,[28] it may be reasonable to assume that notice to the agent-attorney will be relayed to the principal-client-creditor. This assumption holds even when the attorney's retention has been terminated by the client, if the termination is unknown to the debtor.[29]

Although the Tenth Circuit has not directly addressed whether a debtor properly schedules a creditor in care of an attorney-agent for purposes of providing proper formal notice under § 523(a)(3)(B), it has, without discussion, imputed an attorney's actual knowledge of a Chapter 7 case to his or her client-creditor for purposes of § 523(a)(3)(B). Specifically, in *In re Walker*[30] and *Yukon Self Storage Fund v. Green (In re Green)*,[31] the Tenth Circuit upheld bankruptcy court orders barring unscheduled creditors from filing untimely dischargeability complaints against the Chapter 7 debtors. The creditors did not receive formal notice of these cases, but their attorneys were notified of or obtained actual knowledge of the cases, and this notice or knowledge was imputed to their creditor-clients for purposes of § 523(a)(3)(B). In both cases, the Tenth Circuit must have assumed that the attorneys were agents of their creditor-clients.

(Bankr.D.N.M.1989) (citing cases); *see generally In re Locust Bldg. Co.*, 299 F. 756, 769 (2d Cir.1924) (imputed notice, citing cases); *Land*, 215 B.R. at 404 (notice in context of Fed. R. Bankr.P. 1014(a)(2)); *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 104–05 (D.N.J.1993) (notice of claims bar date, citing cases); *Hess I*, 142 F. at 255 (agency must be in context of case); *cf.* Fed. R. Bankr.P. 7004(b)(3) (process on a corporation shall be served on an officer, managing or general agent, or any agent authorized by appointment or by law to receive such service).

**26.** *See, e.g., In re Price*, 871 F.2d 97, 99 (9th Cir.1989); *Maldonado*, 757 F.2d at 51; *Ford Motor Credit*, 680 F.2d at 457–58 (citing cases); *Land*, 215 B.R. at 404; *Linder*, 155 B.R. at 104–105 (citing cases); *Slaiby*, 57 B.R. at 773 (citing cases); *Linzer*, 264 B.R. at 248; *Silver*, 107 B.R. at 329 (citing cases); *Fulton*, 3 B.R. at 603.

**27.** 11 U.S.C. § 342(a); *Mullane*, 339 U.S. at 314, 70 S.Ct. 652.

**28.** *See, Locust Bldg. Co.*, 299 F. at 768; *see also* Kan. S.Ct. R. 226, incorporating Kan R. Prof. Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client"); *id.* at 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter....").

**29.** *See* Comment (Assisting the Client Upon Withdrawal), Kan. S.Ct. R. 226, incorporating Kan. R. Prof. Conduct 1.16 (after an attorney's discharge, even an unfair discharge, "the lawyer must take all reasonable steps to mitigate the consequences to the client.").

**30.** 927 F.2d at 1144–45.

**31.** 876 F.2d at 856.

Concluding that a debtor may schedule a creditor in care of its attorney-agent in appropriate circumstances, we must determine whether the debtor scheduled CPCA in care of its agent and whether the circumstances of this case warranted such a listing. For the reasons stated below, Mr. Coombs of Coombs & Hull was CPCA's agent under Kansas law in the Fraud Action. Mr. Coombs's agency in the Fraud Action had a nexus with the debtor's Chapter 7 case inasmuch as the Fraud Action resulted in the Judgment that the debtor scheduled in his Schedule F which was subject to discharge. Mr. Coombs's agency and the circumstances of the case made the debtor's scheduling of CPCA appropriate, and Mr. Coombs's formal notice of the Chapter 7 case may be imputed to CPCA. CPCA's notice of the debtor's Chapter 7 case prior to the expiration of the Discharge Objection Deadline bars an extension of that Deadline under § 523(a)(3)(B).

3. *Mr. Coombs of Coombs & Hull was CPCA's agent in the Fraud Action under Kansas Law and, therefore, notice of the debtor's Chapter 7 case to him is imputed to CPCA for purposes of § 523(a)(3)(B).*

▮▮▮ Kansas agency law has been summarized as follows:

Kansas has defined "agency" as a contract by which one of the parties confides to the other the management of some business to be transacted in his name, or on his account, and by which that other assumes to do the business and to render an account of it. An agency relationship may be either ex-press or implied. An express agency exists if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. An implied agency may exist if it appears from statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal.

Where the relationship of principal and agent is in issue, the party relying thereon to establish his claim or demand has the burden of establishing its existence by clear and satisfactory evidence. An agency relationship may exist notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency. The determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove the relationship is a question of law.[32]

The Kansas Supreme Court has further added that implied agency "may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred on the agent."[33] And,

[T]he plaintiff establishes agency by a preponderance of the evidence, but this evidence must be clear and convincing in nature. On review, this court considers only the evidence of the successful party to determine whether it is substantial

**32.** *Turner & Boisseau, Chtd. v. Marshall Adjusting Corp.*, 775 F.Supp. 372, 377–78 (D.Kan.1991) (citations and internal quotations omitted).

**33.** *Shawnee State Bank v. North Olathe Indus. Park, Inc.*, 228 Kan. 231, 613 P.2d 1342 (1980), *quoted in Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 710 P.2d 1297, 1303 (1985).

and whether it is of a clear and convincing quality.

. . . .

The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency, in which event the relationship may be held to exist, notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency.[34]

Based on this law and the totality of circumstances of this case, Mr. Coombs was CPCA's agent in the Fraud Action when the debtor's Schedule F was filed in March 1996.

CPCA had no direct contact with the debtor after the Judgment was rendered in 1984 notifying him of its name changes. When the debtor filed his 1996 Chapter 7 petition approximately twelve years later, it was therefore reasonable that he would schedule the Judgment-creditor known to him—CPCA. There is no record that the debtor had any address for CPCA, whether in 1984 or otherwise—CPCA's address does not appear in the Fraud Action papers or anywhere in this Court's record. No address coupled with the fact that there was no entity named CPCA in 1996, also makes it reasonable that the debtor scheduled CPCA at the address of its last attorney of record to in the Fraud Action—Mr. Coombs—the very attorney who represented CPCA in obtaining the Judgment sought to be discharged.[35] There not being any other CPCA contact in the Fraud Action records, Mr. Coombs's appearance on the CPCA's behalf as late as 1991 constituted CPCA's representation to third parties, including the debtor, that Mr. Coombs was its agent in the Fraud Action. This representation was sufficient to establish Mr. Coombs as CPCA's agent in the Fraud Action under Kansas law, regardless of whether he was actually retained by CPCA at that time, whether CPCA agrees with his status as its agent, or whether the parties understood an agency relationship to exist.

By scheduling CPCA through its agent Mr. Coombs, the debtor gave the best notice of his Chapter 7 case to CPCA that was possible under the circumstances. He therefore fulfilled his duty to properly

34. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 827 P.2d 24, 32–34 (1992).

35. We note that some confusion has arisen in this case due to the fact that Mr. Coombs is CPCA's agent, yet the debtor actually named Coombs & Hull as the addressee in Schedule F, not Mr. Coombs. The bankruptcy court confused this point. It held that Coombs & Hull was the attorney of record in the Fraud Action and, therefore, it was reasonable for the debtor to list CPCA c/o Coombs & Hull. Coombs & Hull, however, was *not* the law firm of record in the Fraud Action at any time. Coombs & Hull appears nowhere in the Fraud Action pleadings presented to this Court. It is only Mr. Coombs of "Coombs & Pringle" that appears as counsel of record in the Fraud Action. The bankruptcy court's incorrect finding of fact caused it to focus on Coombs & Hull's receipt of the Bankruptcy Notice. Yet, it had no evidence of Coombs & Hull's address. Thus, it was impossible to make any findings on this point.

Although Schedule F lists CPCA c/o Coombs & Hull, the P.O. Box stated was established to be Mr. Coombs's address. It has not been disputed that Mr. Coombs was employed with Coombs & Hull at all relevant times. Therefore, as recognized by CPCA's primary witness, mail addressed to Coombs & Hull at P.O. Box 306, Chanute, Kansas would in fact be sent to Mr. Coombs of Coombs & Hull. Because the address scheduled by the debtor was established to be Mr. Coombs's address and Mr. Coombs was CPCA's agent in the Fraud Action, it is unnecessary to consider Coombs & Hull's involvement in this case at all other than through the actions of Mr. Coombs.

schedule CPCA and afford it due process. As such, the Bankruptcy Notice sent to Mr. Coombs was "notice" of the debtor's case that may be imputed to CPCA. CPCA's formal notice of the Chapter 7 case through its agent-attorney made it imperative for CPCA to perform its coterminous duty of timely filing a § 523(a)(2), (4) or (6) complaint against the debtor. Its failure to do so bars it from obtaining an extension of time to file such a complaint under § 523(a)(3)(B). Accordingly, the bankruptcy court correctly concluded that CPCA's Judgment was discharged and, therefore, there was no "cause" to reopen the debtor's closed Chapter 7 case under § 350(b).

## III. Conclusion

For the reasons stated above, the bankruptcy court did not abuse its discretion in entering the Reopen Order. Any § 523(a) action that CPCA could have filed against the debtor was time-barred, and its Judgment was discharged. Thus, the bankruptcy court could not afford CPCA any relief in a reopened case. The Reopen Order is AFFIRMED.

CORDOVA, Bankruptcy Judge, Dissenting.

The Chanute Production Credit Association ("CPCA") appeals from an order of the United States bankruptcy court for the District of Kansas denying its Motion to Reopen the Chapter 7 case of the Debtor, Michael Charles Schicke. The majority concludes that the bankruptcy court did not abuse its discretion in denying the Motion to Reopen, and affirms the bankruptcy court's judgment. For the following reasons, I respectfully dissent.

I agree that the bankruptcy judge did not err in denying the Motion to Reopen

simply because it was not necessary to do so to hear CPCA's complaint. *Watson v. Parker (In re Parker)*, 313 F.3d 1267 (10th Cir.2002). Section 523(a)(3)(B)[1] is a "stand alone" exception to discharge, excepting debts that were not listed or scheduled in time for a creditor to file a timely complaint under §§ 523(a)(2), (4), or (6). CPCA obtained a judgment against the Debtor based on fraud and therefore could have brought a complaint under § 523(a)(2), but because it had no knowledge or notice of the bankruptcy that would have allowed it to timely file such a complaint, it should have been permitted to prosecute its complaint under § 523(a)(3)(B). I disagree that CPCA should be barred from bringing an action under § 523(a)(3)(B) to determine dischargeability of its judgment.

Based on the facts as set forth in the record and ably recounted in the majority's opinion, I conclude that the Debtor failed to give adequate and effective notice of the filing of the bankruptcy case to the creditor, CPCA. The record is clear and the evidence is undisputed that CPCA received no formal notice that the Debtor filed a bankruptcy petition, and had no actual knowledge of the filing prior to the entry of discharge. The only testimony regarding notice came from CPCA's officer, who stated CPCA had neither notice nor knowledge in time for them to have filed a complaint under § 523(a)(2),(4), or (6) prior to the Debtor's discharge. Further, it is undisputed that the Debtor sent notice of his bankruptcy filing to CPCA in care of the law firm of Coombs and Hull, at the law firm's address. While William D. Coombs of Coombs and Pringle had represented CPCA in obtaining the judgment against the Debtor in 1981, neither Coombs & Pringle nor Coombs & Hull represented CPCA in the bankruptcy case.

---

1. Unless otherwise stated, all statutory references are to title 11 of the United States Code.

Furthermore, at the time of the filing, the address listed for Coombs and Hull was an incorrect address. In fact, although the testimony at trial indicated that Mr. Hull had once been Mr. Coombs' partner, and documents produced at trial indicate that Mr. Coombs had owned the post office box known as P.O. Box 306, Chanute, Kansas 66720 in 1996, there is no document in the record that refers to Coombs & Hull. The April 16, 1984 Journal Entry in the Montgomery County Court case was filed by Mr. Pringle of Coombs and Pringle, 10 South Steuben, Chanute, Kansas, 66720. The March 14, 1989 Notice of Appearance for CPCA and the July 18, 1991 Praecipe for Execution, both filed in the Montgomery County case, were filed by Frank Beyerl, Whittaker & Beyerl, Chartered, 223 N. Main, P.O. Box 188, Eureka, Kansas, 67045. The October 22, 1991 Request for Execution filed in the Montgomery County case is the only document in the record signed by Mr. Coombs, and he lists his firm as Coombs & Pringle. That document includes a telephone number, but no address. In addition, Mr. Pringle's affidavit states that his address since 1994 has been 702 E. Main, Suite B, P.O. Box 748, Chanute, Kansas 66720. (See Appellant's Appendix, Transcript of Hearing, with attached exhibits admitted at hearing).

The Debtor admitted he did not send notice directly to CPCA because he claimed he could not find its name in the Chanute, Kansas telephone book and could not otherwise find an address for it. I conclude that his efforts to obtain a current address were insufficient and not reasonably calculated to give notice to CPCA. Creditors are entitled to procedural due process and adequate notice, and these rights may not be dispensed with for the sake of convenience or simplicity. *Mul-*

*lane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Section 521(1) requires a debtor to file a list of creditors with the bankruptcy petition. Rule 1007(a)(1) [2] directs a debtor to provide the names and addresses of those creditors. Rule 2002(a) states that these creditors are to be given at least 20 days notice of the first meeting of creditors under § 341(b), and Rule 2002(f)(5) specifies that they be given notice of the time for filing a complaint to determine the dischargeability of a debt pursuant to § 523, as provided by Rule 4007. Rule 4007, in turn, requires that creditors be afforded 30 days notice of the time fixed for filing a complaint under § 523(a), and the complaint must be filed within 60 days of the date first set for the § 341 meeting. If a creditor fails to file a timely complaint under §§ 523(a)(2), (4), and (6), the debt is discharged.

In this case, CPCA did not file a complaint within the 60 day period because it had no notice or actual knowledge of the filing. There is no proof that the law firm of Coombs and Hull received or delivered the initial notice to CPCA. The bankruptcy court imputed the law firm's receipt of the subsequent discharge notice as proof that the firm had received the initial notice and forwarded it to CPCA. There is no factual or legal basis for making such a "leap of faith," especially in the face of evidence to the contrary. Proof of receipt of a document does not constitute proof of receipt of an earlier document. To find as the bankruptcy court did dispenses with the necessity for complying with procedural rules, and countenances the listing of an attorney's address rather than the creditor's, even if that attorney neither represents the creditor in the bankruptcy case, nor has a continuing attorney-client relation-

---

**2.** All Rule references are to the Federal Rules of Bankruptcy Procedure.

ship. Finding that giving notice to Coombs and Hull constituted adequate notice to CPCA because William D. Coombs represented CPCA in obtaining a judgment some 12 years previously, and was therefore CPCA's agent, simply manufactures a connection between the firm and CPCA that is too attenuated to meet due process standards.

The legal standard for notice is whether the notice given was reasonably calculated to give notice to a party, or was reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane*, 339 U.S. at 313, 70 S.Ct. 652. In *Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854, 856–57 (10th Cir. 1989), the Tenth Circuit found that formal notice to a creditor was not required in a Chapter 7 case where the creditor had actual, timely notice of the bar date. In this case the creditor had neither.

The failure to give adequate notice to CPCA in this case is especially egregious considering that CPCA held a judgment against the Debtor in the amount of $583,186.00 based on fraud. Debtor listed only three other unsecured claims totaling $29,605.00. The Debtor's efforts to give notice fell far short of someone genuinely interested in providing a creditor with notice and an opportunity to file a complaint. It is fair to conclude that actual notice was never contemplated.

In conclusion, the facts of this case do not support the proposition that CPCA received notice or had actual knowledge of the filing. Further, there is no factual or legal basis upon which to find implied notice based on a previous attorney-client relationship. Therefore, I dissent.